### CENTRAL OF GEORGIA RY. CO. v. MAYOR, ETC., OF CITY OF MACON et al.

(Circuit Court, S. D. Georgia, W. D.    August 13, 1901.)

CONSTITUTIONAL LAW—DUE PROCESS.

There is a violation of Const. U. S. Amend. art. 14, prohibiting any state from depriving a person of property without due process of law, where a railroad company has a lawfully acquired possession of terminal facilities under a grant from a city, and is in possession under a claim of right, and the city council passes an ordinance declaring the rights of the company under the grant forfeited, and directs the mayor to take possession of the property, and to use therefor the police force, and this is done.

In Equity.

Lawton & Cunningham, Hall & Wimberly, Washington Dessau, and W. A. Harris, for complainant.

Minter Wimberly and Marion Erwin, for defendant mayor, etc., of city of Macon.

John M. Stubbs and Akerman & Akerman, for defendant Macon, D. & S. R. Co.

SPEER, District Judge. The Central of Georgia Railway Company has filed its bill praying for an injunction against the mayor and council of the city of Macon and the Macon, Dublin & Savannah Railroad Company. The averments of the bill are as follows: That on the 7th of May, 1901, the complainant was in the peaceable possession of certain properties, rights of way, and franchises in the city

of Macon for railroad purposes. These are fully set out in the bill. Further, that the Central of Georgia Railway Company owns these properties, except that portion known as the "right of way of the old Macon & Augusta Railroad," by virtue of conveyances from the mayor and council of the city of Macon to the Covington & Macon Railroad Company and the Macon & Northern Railroad Company, to which companies the complainant is the legal successor. The complainant holds, it is alleged, the right of way of the Macon & Augusta Railroad by arrangement and contract between it and the Georgia Railroad & Banking Company, which succeeded to the rights of the said Macon & Augusta. Large sums have been expended on these properties, making necessary improvements, and in the construction of roadbeds and tracks and the maintenance of the same. During the long term in which the complainant has held and possessed these properties, the mayor and council of the city have recognized the contracts as being valid, permitted the expenditure of these moneys, and collected taxes from complainant and its predecessors on all of the properties and improvements thereon, and thus recognized the same as the property of complainant. These tracks and roadbeds are a necessary part of complainant's railroad in the city of Macon, in order that it may discharge its duties to the public as a railroad company. The complainant further charges that, becoming apprised from the public prints and otherwise that these properties were about to be seized and wrested by force from its possession by the mayor and council of the city of Macon and by the Macon, Dublin & Savannah Railroad Company acting in conspiracy with it, it addressed a petition to the said mayor and council calling attention to the ownership set up by complainant. Notwithstanding this fact, the said mayor and council, by resolution, immediately proceeded to declare and did declare the right and title of complainant to the premises in question as forfeited, and the mayor of the city of Macon was instructed to immediately take possession of said properties and to institute any and all legal proceedings necessary for the recovery of the same. Because of the suggestion in the resolution that legal proceedings would be resorted to, complainant waited for the commencement of such proceedings, which, however, have not been commenced, but, on the contrary, the said mayor and council, unmindful as well of complainant's rights as the contractual obligation which it had undertaken, proceeded to make certain contracts with the Macon, Dublin & Savannah Railroad Company, and afterwards, on the 30th day of July, 1901, adopted an ordinance by which that body declared all the rights of complainant to the properties in dispute as forfeited, and directed the mayor of the city to take possession of all of the aforesaid properties, and to use therefor "the entire police force of the city of Macon." In the progress of these proceedings, and in pursuance of the general scheme aforesaid, the mayor and council of the city of Macon on the 31st day of July, 1901, granted all of these properties of the complainant to the Macon, Dublin & Savannah Railroad Company. It is charged that these proceedings were inaugurated and practically consummated while complainant was in peaceable and exclusive possession of the properties, and not-

withstanding that fact the complainant was accorded no opportunity whatever to defend its title thereto.   In further pursuance of the alleged conspiracy aforesaid, the mayor and council of the city of Macon, on the same day that the mayor was authorized to execute and deliver a deed to the Macon, Dublin & Savannah Railroad Company to these properties, notified complainant that immediate and peaceable possession of all the properties was demanded of it, and was further notified that the mayor and council, through the mayor, would take immediate possession of the properties.   Complainant protested, but the said mayor and council did actually oust it from possession, use, and occupation of the properties, and did station policemen along the right of way, with orders to prevent the cars of complainant from being hauled along the side tracks, and complainant, in order to avoid a breach of the peace, was compelled to desist from the use and occupation of its own property.   Charging that the mayor and council of the city of Macon is exercising powers granted to it by the state of Georgia for governmental purposes, and has availed itself of such agencies as a municipal corporation to accomplish the unlawful purposes aforesaid, the complainant charges that the action of the mayor and council, in adopting said ordinances, in giving them effect, and in calling out the police for the purpose of wresting complainant's property from it, are all in violation of the prohibition of the fourteenth amendment of the constitution of the United States, which declares: "Nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."   The prayers are that the court will immediately restrain and enjoin the defendants from further withholding said property from the complainant, and from interference in any manner in the ownership, possession, and enjoyment of said property; that the mayor and council of the city of Macon be required at once to remove the officers stationed by it on said property, and restore the property to the condition in which the same was prior to the ordinances complained of.   There is a prayer for a permanent injunction against both of the parties defendant, and another that the ordinances be declared to be null and void by reason of being in violation of the provision of the fourteenth amendment above quoted, and the tenth section of article 1 of the constitution, which provides that "no state shall pass any law impairing the obligation of contracts."   A further prayer is that the contract between the mayor and council of the city of Macon and the Macon, Dublin & Savannah Railroad Company conveying away properties of complainant be decreed to be void, and ordered to be surrendered up and canceled as a cloud upon the title held by complainant, as an impairment and in derogation of the rights granted and guarantied to complainants by the constitution of the United States.   When the bill was presented to the court, a mandatory decree for injunction was granted in the language following:

"It is ordered that the mayor and council of the city of Macon and its officers are restrained from withholding from complainant the full, complete, and free and undisturbed possession, use, occupancy, and enjoyment

of the property described in the bill, or from in any manner interfering with complainant's possession and free and unrestricted use of said property; and defendants are restrained from exercising any acts of possession or ownership of said property, or from in any manner interfering with complainant in the possession thereof; and it is ordered that the defendants restore at once said property to complainant in the same condition the same was prior to the ordinances and other acts complained of. It is ordered that defendants, if they so desire, may have a hearing before me, at Mt. Airy, Ga., on August 9th instant, on the question whether the restraining order should be revoked or modified, and that, if defendants do not care to be then heard, that the restraining order granted stand of force until the further order of the court."

Pursuant to the terms of this order, on the day fixed by the order a motion was made to revoke the interlocutory decree above mentioned. Defendants filed their answers, both parties presented affidavits and much documentary evidence, and counsel were fully heard. The cause shown against the injunction by the respondents was that the complainant, by a total failure to comply with the conditions of the original grant, had wholly forfeited the terminal facilities which are the subject-matter of this controversy. The respondents further contended that the complainant was not in actual possession of the premises. The mayor and council admit that it did enter said premises, and take possession, but used no force; that it acted in the best of faith, and was unconscious of any adverse claims on the part of complainant at the time it made its grant to the Macon, Dublin & Savannah Railroad; that it believed that the Macon & Northern Railroad Company, which was one of the predecessors of complainant, had abandoned the property claimed by it in 1895, and thought its rental of the same to the Macon, Dublin & Savannah Railroad Company was a trick to make it appear that it was in actual possession of the property. In short, the defense attempted by the respondents was that the complainant either never had title to the properties in dispute, or that such title as it had had been forfeited by a nonuser of the easement granted to it by the city. It is also contended by the respondents that, the complainant having sought the remedy of a court of equity, with ample power to do full and complete justice between the parties, the court will inquire into the good faith of the entire transaction and the relation of parties to each other, and ascertain what is the substantial interest of the public as well as of the parties concerned, and will not permit a complainant to come into court who does not offer to do equity, and will not permit a retention of property fraudulently acquired, and to which it has no title, to the injury not only of the party who in equity and law has the title, but who desires to use it for a great public use. Respondents at first questioned the jurisdiction of the court to grant the relief sought, but not only themselves sought affirmative action and substantial relief on the part of the court, but in the argument expressly admitted the jurisdiction of the court to hear the matters presented by the bill, denying, however, that the complainant had made a case which showed the facts essential to the jurisdiction in equity invoked.

For the purposes of this hearing, the court does not deem it necessary or proper to make inquiry beyond this: Has the mayor and council of the city of Macon, because of its conduct described in the bill and proven in the evidence, violated a right of the complainant

secured to it by the provision above quoted from the fourteenth amendment to the constitution of the United States? It is incontestable that the Central of Georgia Railway Company and its predecessors in such title as it has had been long in the lawfully acquired possession of the terminal properties in dispute, which had been originally granted from the public domain of the city of Macon. It is equally incontestable that it was at the time of the occurrences denounced by the complainant's bill in possession under a claim of right. Such possession and such claim of right, whether finally sustainable upon legal grounds or not, constitute property rights of which the complainant cannot be deprived as long as it chooses to maintain them, save by the customary judicial proceedings; in other words, by "due process of law." There is no room for dispute about the facts here stated, or about the conclusion from the consideration of the facts with proper consideration of the law. As to the facts, the mayor and council of the city of Macon are concluded by their own official action. Their contracts with the predecessors of the complainant, namely, the Macon & Northern Railroad Company and the Macon & Augusta Railroad Company, are in evidence before the court. They unquestionably grant the premises in dispute, with certain limitations, however, imposing duties upon these railroad companies, which, if not performed, are intended to result in a forfeiture. The several resolutions of the city council recognize that these terminal facilities were heretofore granted. Take, for instance, the initial language of the ordinance of July 30, 1901. It recites:

"Whereas, heretofore, to wit, on or about the first day of February, 1866, the mayor and council of the city of Macon made certain grants of right of way and terminal facilities in the city of Macon to the Macon and Augusta Railway Company, formerly the Milledgeville Railroad Company, and at a council meeting held on or about December 31, 1885, and subsequent to that time on March 19, 1886, granted to the Covington and Macon Railroad Company certain rights of way and land for terminal facilities in the city of Macon."

It is true that the subsequent clauses of the same resolution state that these rights thus granted have either been devested from the grantees and their successor by litigation or by forfeiture; but it is seen that the city itself, even in the ordinance by which the wrong and injury complained of has been done, clearly recognizes the original title of the complainant. It is true that in subsequent clauses of the same resolution it denies that this title longer exists, and claims title in itself, and, as we shall see, takes possession by force and arms. Thus the Central of Georgia Railway Company is deprived of properties to which it claims title,—properties long in its occupancy and control, and in the occupancy and control of its predecessors; and, as is clearly deducible from the foregoing, is deprived of this property without due process of law. Now, in its controversies with another party, which involve property rights of this general character, the city of Macon, in contemplation of law, has the right, of its own motion, to exercise no more power than would a private individual claiming title to land possessed under a claim of right by another. If A. should grant to B. a lot of land upon certain conditions definitely set out in the deed, if B. is allowed to take and

hold possession under claim of right, and if a controversy should arise between A. and B. as to whether the conditions had been complied with, and whether a forfeiture for a failure to comply had resulted, A. would have no lawful authority to declare that B. had forfeited the land. His declaration to that intent, like the resolution of the mayor and council of the city of Macon here, would be a mere brutum fulmen. He would have less right to go in upon the lands, and with force and arms throw B. out, and take possession himself. No civilized community could long survive if such methods on the part of its citizens or subjects were tolerated. Each man would be a judge in his own case. Not only would he be judge, but he would also be the executive officer to carry his conclusion into effectiveness. If practiced between individuals, how preposterous would such methods seem to men accustomed to the enjoyment of those benefits which flow from the orderly administration of justice? If such methods were the rule, and not the exception, the reign of law would cease, and society would revert to the condition of those semibarbarous times when the rule was, "Let him take who has the power, and let him keep who can." If such practices would be destructive to social order on the part of the individual, how dangerous do they become when exercised by a government, which has and exercises authority to draw to its support and potentiality all the individuals under its control? If not protected by law, the property of the citizens is at its mercy. The rights of the individual are dependent upon the will of those in power, and the enjoyment of liberty, which is nothing more than the assured consciousness of security in the enjoyment of individual rights, will no longer exist. The great men who framed the constitution of the United States were familiar with innumerable and baleful instances where not only property and liberty, but where life itself, had been destroyed by the exercise of arbitrary power. In many familiar clauses of that great instrument they sought to guard the people of this country from the recurrence of such wrongs. It was, however, believed by many of our thoughtful countrymen of that day that the original draft of the constitution contained no such guaranties against the exercise of arbitrary power as were required for the protection of the citizen. The people were alarmed on this account. Said Chief Justice Marshall in Barron v. Mayor, etc., 7 Pet. 250, 8 L. Ed. 672, decided in 1833:

"In almost every convention by which the constitution was adopted amendments to guard against the abuse of power were recommended. These amendments demanded security against the apprehended encroachment of the general government, not against those of the local government. In compliance with the sentiments thus generally expressed, to quiet the fears thus extensively entertained, amendments were proposed by the required majority in congress, and adopted by the states. These amendments contain no expression indicating an intention to apply them to the state governments. This court cannot so apply them."

Thus it was that the fifth amendment to the constitution, proposed by Madison, one of the framers of the original instrument, which was recommended to the states by the First congress, and adopted soon thereafter, contained the provision that "no person shall be deprived of life, liberty or property without due process of law." This inhibi-

tion, however, as we have seen, related to the action of the general government. There was no adequate restriction on the power of the states in this respect until the adoption of the fourteenth amendment, which, as we have seen, provides: "Nor shall any state deprive any person of life, liberty or property without due process of law." "This amendment," says Justice Brown in Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780, "largely extended the power of the federal courts and congress, and for the first time authorized the former to declare invalid the laws and judicial decisions of the states abridging the rights of citizens, or denying them the benefit of due process of law." Nor is the constitution of our own state silent upon this great provision preservative of rights. Paragraph 2 of article 1 of the constitution of the state of Georgia declares that "protection to person and property is the paramount duty of government and shall be impartial and complete," and the cognate section scarcely varies from the provision of the national constitution: "No person shall be deprived of life, liberty or property except by due process of law." What is due process of law? Said the supreme court in Holden v. Hardy, supra:

"Due process of law implies at least a conformity with natural and inherent principles of justice, and forbids that one man's right of property shall be taken for the benefit of another, or for the benefit of the state, without compensation, and that no one shall be condemned in his person or property without an opportunity of being heard in his own defense."

It has been elsewhere held that it is essential to due process of law that there shall not only be notice of time and place for a hearing, but, what is more important, that there shall be a tribunal clothed with power by methods and rules prescribed by law to hear and determine the question involved. Charles v. City of Marion (C. C.) 98 Fed. 166. Has the Central of Georgia Railway Company the right to invoke this provision of the constitution in its own behalf? The ruling of the highest appellate court of the nation is equally conclusive of that inquiry. A railroad corporation is a person, within the meaning of the fourteenth amendment, declaring that no state shall deprive any person of property without due process of law. Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819. Is the city of Macon such an agency of the state as will make it amenable to this provision of the constitution? This is equally clear. "The exercise by a city of its general power given it by the legislature of controlling the streets and of making and enforcing contracts with reference to their occupancy by individuals or corporations, is action by the state, within the meaning of the provision of the first section of the fourteenth constitutional amendment, which prohibits any state from depriving any person of property without due process of law; and the passage of a resolution by the council of a city assuming to declare a forfeiture of a contract previously made with a railroad company, under which the company occupies a street with its tracks, and a declaration by a city of its intention to dispossess the company, and take possession of the street by the use of its police, is a threatened violation of the constitutional rights of the company, which a federal court has jurisdiction to restrain by injunction." Iron Mountain R.

Co. v. City of Memphis, 37 C. C. A. 410, 96 Fed. 113: This case, indeed, is one of first importance to the determination of the rights of the parties before the court. It was a suit between a railroad company and a municipal corporation. It was an attempt on the part of the corporation—it is true, with some decent show of affording the railroad company a hearing as to its rights—to declare a forfeiture thereof by resolution, and to use its police force to make that resolution effective. The authorities are there arrayed with much clearness and force by Circuit Judge Taft, who rendered the decision for the circuit court of appeals for the Sixth circuit. A municipal corporation created by the state was there, as we have seen, decided to be an instrumentality of the state, and said the court:

"It necessarily follows that if, in the case at bar, the resolution of the legislative council, under its authority to control the streets, has deprived or was about to deprive the complainant of its property without due process of law, complainant was entitled to a judicial remedy, under the United States circuit court jurisdiction act of 1887–1888 and the fourteenth amendment, against such action. The averment of the bill was that the council passed a resolution of forfeiture and of the declaration of its purpose to take possession of the street, intending to use the police force in enforcing such declaration. It could only use the police force in its governmental capacity as a branch of the state government."

There, as here, the disposition of the land in dispute was vested by the state in the city. There, as here, it was argued that the resolution of the mayor and council of the city of Memphis, like the resolution of the mayor and council of the city of Macon, was in accordance with the language of the original grant; that this language left to the city the right to declare such forfeiture at its option, and upon the declaration of such forfeiture to resume possession of the property. But says the court:

"The language of the conditions of the contract and of the forfeiture clause are like an ordinary condition subsequent in any lease or deed conveying an estate. Such forfeiture clauses always provide that upon the breach of the condition the lessor or the grantor may re-enter upon the premises, and have the same in his former estate; but it would be novel law to hold that under such a clause the lessor or grantor might lawfully by force and arms repossess himself of the estate after a breach of the condition, if such repossession were resisted by the lessee or grantee."

In Railroad Co. v. Johnson, 119 U. S. 608, 7 Sup. Ct. 339, 30 L. Ed. 504, the supreme court laid down the rule which has been the common law ever since the statute of 5 Rich. II. c. 7, and was probably then only declaratory of the law that a lessor entitled to possession may acquire such possession by lawful entry, but that entry by force is not lawful. Speaking of the purpose of the law, Justice Miller in this case said:

"Where any person is in the peaceable and quiet possession, he shall not be turned out by the strong hand, by force, by violence, or by terror. The party so using force and acquiring possession may have the superior title, or may have the better right to the present possession, but the policy of the law in this class of cases is to prevent disturbances of the public peace; to forbid any person righting himself, in a case of that kind, by his own hand, and by violence; and to require that the party who has in this manner obtained possession shall restore it to the party from whom it has been so obtained; and then, when the parties are in statu quo, or in the same position

as they were before the use of violence, the party out of possession must resort to legal means to obtain his possession, as he should have done in the first instance."

Did the city of Macon dispossess the Central by force? This is also incontestable. The resolution threatened not the use of a policeman, but of the "entire police force." The ordinary business of the complainant was stopped. Its locomotive engineer was arrested. Placards were posted, stating that the city had taken possession. But this is not all. On the complaint of merchants and manufacturers of Macon, whose business was interfered with, and who protested, the chief magistrate of the city issued the manifesto following:

"Macon, Ga., August 1, 1901.

"To the Watchmen in Charge of the Property Taken from the Possession of the Central of Georgia Railway Company, the Georgia Railroad Company, and the Louisville and Nashville Railroad Company: You will not interfere with the delivery of cars from and to Jaques & Tinsley, English & Johnson, Hayes and Mansfield side tracks by the Southern Railway Company, the Central of Georgia, the Georgia Railroad Company, or the Macon, Dublin and Savannah Railroad Company, until further orders.

"[Signed]                                 Bridges Smith, Mayor."

It will be observed that this is addressed by the mayor to the watchmen of the city in charge of property "taken from possession" of the Central of Georgia Railway Company and others, and is besides a direct exercise of control over the operations of the railway company on these tracks. The service to certain customers is permitted. It is logically inferable that service to others is denied, but even here the mayor reserves the exercise of control, for the indulgence granted is effective "until further orders." These "further orders" obviously must emanate from the mayor himself. Further discussion is needless. The duty of the court is obvious. The injunction granted will be made permanent until the final hearing, when, since the court now has jurisdiction of the parties and subject-matter, the disputed question of title can be settled after both parties have enjoyed the salutary privilege of due process of law.