UNITED STATES v. NORTHERN PAC. TERMINAL CO.

(District Court, D. Oregon. April 2, 1906.)

No. 4,813.

RAILROADS—SAFETY APPLIANCE ACT—MOVING CARS—TERMINAL COMPANY.
A terminal company which received cars of coal coming from another state, and delivered them within its yards to the engines of a railroad company, was engaged in moving interstate traffic, within Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174].

On Demurrer to Separate Answers.

This is an action instituted by the United States against the defendant, as a common carrier engaged in interstate commerce, to recover for violation of the safety appliance act of Congress approved March 2, 1893, 27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174], and acts amendatory thereto, in hauling on its line of railroad, by first count, one car, namely, Union Pacific coal No. 11,147, used in moving interstate traffic, to wit, coal consigned

from Cumberland, in the state of Wyoming, to a point in some state of the United States other than Wyoming, when the coupling and uncoupling apparatus on said car was out of repair and inoperative. The second count has relation to Oregon Short Line Company car No. 5,574, consigned from same point to like destination. Other counts follow that are not now involved; the matters with relation thereto having been settled out of court.

As a separate defense, the defendant sets up, in effect, that it is engaged in furnishing terminal facilities only for those railroads terminating in the city of Portland, namely, the Northern Pacific, the Southern Pacific, and the Oregon Railroad & Navigation Company; that it does not own nor control any railroad except its tracks within the terminal yards, none of which is now, or at any time has been, used in the transportation of interstate commerce, except that the engines of the defendant are used in switching the cars of the several companies for which it furnishes terminal facilities to the team tracks of the defendant, for unloading purposes for Portland delivery and placing the same and other such cars upon the tracks appropriated to the use of the company to which such cars belong; that of the cars mentioned in the complaint none were hauled over any lines of the railroad of defendant, or at all transported or operated by defendant, except within the terminal grounds, and there only for the purposes aforesaid.

Answering separately the first cause of action, the defendant alleges that the said car No. 11,147 was brought into defendant's terminal yards by the Southern Pacific Company, having loaded thereon coal, to be delivered, received, and used upon the engines of the Southern Pacific Company in the city of Portland; that defendant had no means of knowing the condition of said car, or the coupling apparatus complained of, until the same came into its yards; that upon so receiving said car the coal thereon was transferred by defendant to the engines of the Southern Pacific Company, but, on discovering that the coupling gear was out of order, defendant immediately delivered the car back to the Southern Pacific Company, with a tag attached, for the purpose of having the same taken to the shops of the latter company for repairs.

As it respects the second cause, the car was brought in by the Oregon Railroad & Navigation Company, the coal to be, and was, transferred by the defendant to the engines of the Southern Pacific Company, within the terminal yards.

The plaintiff has demurred to each of these separate answers, on the ground that neither of them states facts sufficient to constitute a defense to the action.

W. C. Bristol, U. S. Dist. Atty.

Dolph, Mallory, Simon & Gearin, for defendant.

WOLVERTON, District Judge (after stating the facts). Two questions were discussed on the hearing of the demurrer: First, whether the defendant was engaged in moving interstate traffic where the shipment of the commodity originated in the state of Wyoming, was carried to Portland, in the state of Oregon, by one of the lines entering the terminal company's yards, there delivered to the latter company, and by it delivered at its team tracks, where the commodity was unloaded to be taken elsewhere at point of destination within the city; and, second, whether defendant was engaged in moving interstate traffic where the shipment originated and was delivered as above to the terminal company, and by it delivered within its yards to the engines of one of the railroad companies. It was incidentally suggested whether the terminal company was engaged in moving interstate traffic at all, it being merely an agency for the different lines terminating in its yards for distributing the traffic originating within the lines themselves, from one line to another, to be by such lines carried to destination; but the

point was conceded in the argument. So was the other point conceded, that the defendant was engaged in moving interstate traffic by delivering the freight, when hauled into its yards, to its team tracks to be delivered at destination within the city. There is therefore but one question left to discuss, which is the latter of the two first stated.

The statute was designed to inhibit the hauling, or using by any railroad company in its line, any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, etc.; the denouncement being against the use of the car. It makes but little difference, therefore, whether the car contained at the time any commodity being carried as freight or not, if the car was one being used in moving interstate traffic, not in the sense that at the particular time it was going, loaded or partially so with a commodity being shipped from one state into another, or others, but that it was being employed in a service that was moving interstate traffic. Such is the construction given the law by Shiras, District Judge, in Voelker v. Chicago, M. & St. P. Ry Co. (C. C.) 116 Fed. 867, and approved by Mr. Chief Justice Fuller in Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363.

The fact that the cars in question were at the time carrying a commodity that had been shipped from one state into, or through, another, demonstrates the averment, however, that it was then engaged in moving interstate traffic. The cardinal purpose of the terminal company is to facilitate the transfer of these cars as among the three lines of railway centering in the former's yards. If the car is being used by any of these lines for the transportation of interstate traffic, and its destination is to pass from one line to the other, it must pass through the yards of the terminal company and be hauled by it. When, therefore, the terminal company is engaged in effecting a transfer of one of these cars from one line of railway to another, it is itself engaged in hauling a car used in moving interstate traffic. Thus far there can be absolutely no cavil.

But what is the difference if it takes the car from one of the lines and moves it to its own team track, there to be unloaded, or moves it back empty, and places it in one of the lines again to be forwarded elsewhere? In either event it handles a car used in the designated traffic. So it does with equal fault when it moves a car, used for moving interstate traffic, set in by one of the lines, to a convenient engine upon the yard, to be unloaded of its coal designed for use by such engine. It is a hauling or using a car, the particular use of which is inhibited by the statute. The result is deducible by strong analogy from the case of Johnson v. S. P. Company, supra.

I am therefore of the opinion that the demurrer to the answers should be sustained, and it is so ordered.