# Southern Express Company *v.* Saks.

*Damages for Failure to Deliver Goods.*

(Decided April 29, 1909. 49 South. 392.)

1. *Carriers; Connecting Carriers; Liability.*—In the absence of a special contract or the existence of the relation of partnership or agency, between the initial and connecting carrier, the connecting carrier is liable only for loss or damage occurring on its own line.

2. *Same; Burden of Proof.*—Unless some relation of agency or partnership or some special contract affects to change the rule, the burden is on the plaintiff to establish the receipt of the goods by the connecting carrier in an action against the connecting carrier for loss or damage to goods carried over two lines.

3. *Same.*—Where there is a partial delivery of the goods by the connecting carrier, the presumption of the receipt of the goods by it in the same condition as when delivered to the initial carrier exists, and puts on the connecting carrier the burden of showing that the loss or damage did not occur while the goods were in its custody.

4. *Same; Partnership.*—Where the connecting carrier, in this instance the Southern Express Company, was the only express company, having a line into B. and it received goods from the Adams Express Company, in New York with which it had a mileage agreement, and two ways of shipping, the one being the longer and more advantageous to the Southern Express Company, the fact that it had labels made which it sent to its patrons directing goods to be expressed by the longer route and that plaintiff, one of its large customers, had a letter from the Southern Express Company, directed to the Adams Express Company, directing the shipments to him over the longer route, which letter was sent to and received by the Adams Express Company, did not show any partnership existing between the two express companies so as to charge the Southern company with the loss, in the absence of evidence showing that the goods were delivered to it; nor did these facts show that the Southern Company had made the Adams Company its agent so as to render the Southern Company liable in the absence of a showing that the Southern Company had received the goods.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by Louis Saks against the Southern Express Company for damages for the loss of goods delivered in New York to the Adams Express Company, and consigned to plaintiff in Birmingham, by way of the Southern Express Company as a connecting carrier. Judgment for plaintiff and defendant appeals. Reversed and remanded.

LONDON & LONDON, for appellant. We think it clear under all the evidence that no partnership is shown to have existed between the two companies. If the bill of lading be treated as such, it was simply an obligation on the part of the initial carrier to transport and deliver the goods from New York to Birmingham, and it is liable for all the lines.—*Jones V. P. S. & N. R. R. Co.*, 89 Ala. 376. A bill of lading for through transportation by a common carrier where the delivery is to be made by a connecting carrier does not make each line liable for all.—*Ellsworth v. Tartt*, 26 Ala. 733; *M. & W. P. R. R. Co. v. Moore*, 51 Ala. 394; *K. C. M. & B. R. R. Co. v. Foster*, 134 Ala. 224; *Southern Express Co. v. Hess*, 53 Ala. 19; *R. R. Co. v. Jones*, 155 U. S. 333. A terminal carrier is only responsible on a through shipment where it is shown that the goods were received by it.—*R. R. Co. v. Hughart*, 90 Ala. 36; *L. & N. R. R. Co. v. Jones*, 100 Ala. 263; Moore on Carriers, 468. There may be a common agent, but this does not make each carrier liable unless there is a special contract or some relation beyond that of connecting carriers until a delivery is shown.—*Ellsworth v. Tartt, supra; M. & G. R. R. Co. v. Copeland*, 63 Ala. 222; *M. & E. R. R. Co. v. Culver*, 75 Ala. 592. The liability of a connecting carrier does not begin until it is shown that the goods are delivered to it with directions for shipment.—*Mount Vernon Co. v. A. G. Ry. Co.*, 92 Ala. 292; 1 Hutchison on Carriers, secs. 112 and 131,

and authorities supra. On these authorities no partnership is shown between the two carriers. In order to constitute an agreement between connecting lines a partnership agreement, it must be something more than a mere traffic arrangement for providing for a proper division of freight charges. Traffic arrangements for the division of freight charges, for the transfer of consignment or of cars, and for switching and similar privileges, exist between all companies whose lines meet, and in no way affect the independence of each line.—6 Am. & Eng. Ency. Law, 657. Citing *St. Louis, etc R. Co. v. Neel*, 55 Am. & Eng. R. Cas. 428; *Converse v. Norwich, etc Transp. Co.*, 33 Conn. 166; *Burroughs v. Norwich, etc. R. Co.* 100 Mass. 26; *Wehmann v. Minneapolis, etc., R. Co.*, 58 Minn. 22; *Watkins v. Terre Haute, etc., R. Co.*, 8 Mo. App. 570; *Washington v. Raleigh, etc., R. Co.*, 101 N. Car. 239, 37 Am. & Eng. R. Cas. 25; *Fort Worth, etc., R. Co. v. Fuller*, 3 Tex. Civ. App. 340; *Fort Worth, etc., R. Co. v. Johnson*, 5 Tex. Civ. App. 24; *Galveston, etc., R. Co. v. Johnson*, 37 S. W. Rep. 243. See also *Merrick v. Gordon*, 20 N. Y. 96; *Croft v. Baltimore, etc., R. Co.*, 1 McArthur (D. C.), 492; *Straiton v. New York, etc., R. Co.*, 2 E. D. Smith (N. Y.), 184; *Deming v. Norfolk, etc., R. Co.*, 21 Fed. Rep. 25, 16 Am. & Eng. R. Cas. 232.

FRANK S. WHITE & SONS, for appellee. The objection to the bill of lading or receipt came too late.—*Fountain v. Ware*, 56 Ala. 538; *M. & E. R. R. Co. v. Greenwood*, 99 Ala. 501; *A. G. S. Bailey*, 112 Ala. 167. It was shown undisputedly that the original receipt was outside the state of Alabama, and hence, the contents of the same or a copy of the same was admissible.—*Snow v. Cobb*, 61 Ala. 363; *Willden v. M. & P. Bank*, 64 Ala. 1; *Elliott v. Stocks*, 67 Ala. 290; *Hoyle v. Mann*, 144 Ala. 521. The receipt for the goods from the carrier at the place of ship-

ment is evidence against the last carrier for the purpose of showing what goods were delivered, their condition at the time, and the terms of the contract of shipment.— *Southern Ex. Co. v. Hess,* 53 Ala. 19; Hutchison on Carriers, sec. 761; 94 N. C. 445. The giving of through bill of lading, the making of through freight charges, and the act of the agent of the first carrier, who is the agent of another carrier, sufficiently shows joint liability, on the part of the two carriers for the failure to deliver goods according to the contract.—*I. & G. N. R. R. Co. v. Tisdale,* 11 S. W. 900; Hutchison on Carriers, secs. 158; 160, 162, 169 and 170. Where facts show mutual agency delivery to one is delivered to all.—Edwards on Bailment, sec. 565-570; Story on Bailment, sec. 529; Storey on Agency, sec. 451-454. The general oral charge of the court must be construed as a whole, and will not be held to be erroneous, if it contains a correct statement of the law when considered as a whole.—128 Ala. 242, 139 Ala. 462. The affirmative charge could not properly be given. —121 Ala. 471; 131 Ala. 305; 134 Ala. 242; 136 Ala. 568.

McCLELLAN, J.—As a matter of substantive law, it is settled in this state that, in the absence of special contract or the existence of a relation of partnership or agency between an initial and a connecting carrier, a connecting carrier is liable only for loss or damage occurring on its own line.—*M. R. R. v. Moore,* 51 Ala. 394; *Ellsworth v. Tartt,* 26 Ala. 733, 62 Am. Dec. 749; *K. C. M. & B. R. R. v. Foster,* 134 Ala. 244, 32 South. 773, 92 Am. St. Rep. 25.

Four packages of cloaks were delivered by a dealer in New York City to an agent of the Adams Express Company for transportation to the appellee, Saks, at Birmingham; the agent giving the dealer a receipt therefor in which the destination of the packages was indicat-

ed. We assume, on the proof, that the packages never reached the consignee. There was, as we understand the bill, no evidence that these packages were delivered by the Adams Company to the Southern Express Company. Aside from the relations of agency or partnership asserted by appellee to have existed between these carriers, the primary inquiry is: Was the burden of proof on the appellee to show that these packages came into the cus- tody of the appellant? Or, delivery to the Adams Company having been made, was the burden of proof then on the appellant, last carrier, to refute the presumption thereupon alleged to have arisen by showing that the goods were not delivered to it, never came to its custody?

The rule is that, in an action against the last carrier for loss of or damage to goods, the burden of proof is on the plaintiff to establish the receipt of the goods by the carrier sued, unless a relation of agency or partnership or special contract affected, as before indicated, the status.--6 Am. & Eng. Ency. Law, pp. 625, 653, and note; *C. B. & Q. R. R. v. Goldman*, 46 Ill. App. 625; 3 Hutch. Carriers, § 1347, and note; *Texas & N. O. R. R. v. Berry,* 31 Tex. Civ. App. 3, 71 S. W. 326. Other authorities might be added. Where there is a partial delivery of the consignment by the last carrier, and that carrier is sued, the presumption of receipt by it of the goods in the same condition as when delivered to the initial carrier affects to cast on the defending carrier the burden to exculpate itself by showing that the loss or damage did not occur while the goods were in its custody.— *Southern Ry. Co. v. Hess,* 53 Ala. 19; 3 Hutchinson, supra; *C. B. & Q. R. R. v. Goldman, supra; Texas & N. O. R. R. v. Berry, supra.* These rules are necessarily sound as a consequence of the substantive law first above announced. It would be egregiously illogical to maintain the doctrine of the substantive law and yet relieve the

plaintiff, in case of a total failure to deliver, of the prima ry obligation to trace his totally lost shipment into the custody of the last carrier, whom he sues, unless the responsibility or liability of the defending carrier was altered by special contract or by the relations described. Where there is a partial delivery to the consignee, the presumption mentioned aids the plaintiff to the extent of casting the onus stated on the last carrier sued. Such is the ruling of the *Hess Case*. There the delivery to the consignee was of a part of the consignment, and on the proof of such delivery the presumption prevailed to shift the burden to the defendant, if it would escape liability, to exculpate itself as indicated. There being no evidence of the receipt of these packages by the appellant, it results that this plaintiff cannot recover in the present state of the evidence unless the defined conditions to a different responsibility in the premises were shown. There is no insistence that a special contract existed so as to thus operate. Was there shown a relation of agency or partnership between these carriers in respect of this consignment?

We will state the evidence: The Southern Express Company was the only carrier of that character serving the city of Birmingham. Saks was, at the time in question, a large patron of the Southern Company. The connecting points, for the city of Birmingham, between the Adams Company and the Southern Company for shipments from New York City to Birmingham, were Nashville, Tenn., and Washington, D. C. The course of business between the companies was for the Adams Company to accept, for transportation from New York City to Birmingham, articles or packages, to bill then through, to deliver them at one of the connecting points mentioned to the Southern Company, and for the service one charge was exacted. The charge paid at New York, or, collected

at Birmingham, was apportioned between the carriers in proportion to the mileage over which the consignment was carried by the respective companies. Accordingly, it was to the interest of the Southern Company to have consignments routed for delivery, by the Adams Company, to it at Washington, a point more remote than Nashville from Birmingham. On the other hand, a like interest was that of the Adams Company to route consignments via Nashville; and it may be reasonably assumed, if indeed it does not affirmatively appear in the bill, that, unless controlled to the contrary, the Adams Company would route consignments to its own advantage. The testimony describes much activity on the part of representatives of the Southern Company to have prospective consignments (including the one here involved, we assume) routed for delivery to it at Washington. Labels were printed and distributed by the Southern Company to its patrons at Birmingham on which the routing was directed. Some of these labels were given Saks, and he forwarded them to concerns in New York City, from which he bought goods to be sent by express carriage. Besides this, a representative of the Southern Company gave Saks a letter addressed, it seems, to the Adams Company, directing the routing of shipments to Saks to be via Washington. This letter was, it appears, sent to and received by the Adams Company.

Appellee contends that these facts and circumstances show, at least prima facie, a joint undertaking, a partnership, in this instance, between the companies, thereby rendering appellant liable for the loss described, or else that the Adams Company was the agent, in this instance, of the appellant, and therefore that appallant is liable in the premises in accordance with the general rules of law charging the principal with the dereliction of the agent acting within the scope of the agent's commission. The assertion of a joint undertak-

ing in the premises cannot be approved in the light of the declarations of law, and supporting reason, made by this court in *Ellsworth v. Tartt*, 26 Ala. 733, 62 Am. Dec. 749. We regard this court as committed to the principles announced in that case, whatever the views entertained elsewhere. There Tartt had lost some of his property while en route from Montgomery to Charleston. He purchased a ticket entitling him to carriage from the former to the latter city. Ellsworth was the proprietor of a line of stages affording conveyance over a portion of the route between the two cities. Ellsworth accepted Tartt as a passenger in virtue of such ticket. The division of the total charge for transportation over the entire route was, as in this case, in proportion to mileage. The court, applying general principles governing the determination of partnership vel non, ruled that Ellsworth bore no relation of partnership in the premises. The facts and circumstances in this case do not distinguish it from that present in the Ellsworth Case. There was, we hold, no relation of partnership between the Adams Company and the appellant. The agency asserted by appellee was that of the Adams Company for the appellant. Do the facts and circumstances presented show such an agency as imposed on the appellant responsibility for the conduct of the Adams Company? We are of opinion that they do not.

In view of the situation of the two companies, we think the acts set forth are not only consistent with a status independent of the defined agency in the premises, but that they are wholly inconsistent with a relation of principal and agent existing, on the occasion, between the Southern and Adams Companies, respectively, for the purpose, or with the result, of fixing and controlling appellant's liability for the negligence of the Adams Company. The acts of the appellant consist only with a na-

tural desire to enhance its profits by inducing shippers, to Birmingham consignees, to direct the routing of consignments so as to give appellant the benefit of the longest possible haul over its line. The activity of the appellant's representatives and the methods employed to effect the obvious purpose demonstrate the antagonistic, competitive situation existing between the companies as regarded such shipments. The pressure to be exerted, by prospective consignors in New York, by the use of the labels furnished, clearly indicates the commercial hostility of the interests of the two companies, and evidences the necessity of appeal to consignors to control the routing rather than a reliance upon any relationship of agency in the premises. The letter from appellant to the Adams Company requesting or even directing that consignments to appellee be routed via Washington was to like effect suggested by the same pardonably selfish motives, as inspired the effort to have the shippers direct the routing indicated by the labels. The letter was no more than evidence of commercial diligence of the appellant to conserve its interests by enhancing its share in the common fund to be derived from the service to be rendered by both companies. That the letter was not sent immediately to the Adams Company, but that it was committed to appellee for transmission to that company, indisputably proves, we think, that the letter's purpose and object was similar to that evidently inspiring the furnishing of the labels.

Both appellant and appellee cite the Hess Case as supporting their respective contentions. We have indicated our interpretation, in some particulars, of that decision. In respect of the reference therein made to the agency created by the course of business described, it is apparent from the whole opinion that there was no intention to affirm an agency, on the conditions therein stated,

effective to render the last carrier liable for the negligence of any other of the carriers affording the through routing. The agency declared to have been created was that of a limited character and by no means inclusive of a real guaranty against the wrongs of other carriers of the entire route.

It not being shown that there was a partial delivery of the consignment, nor that there was a special contract in respect of this shipment, nor that there was a relation of partnership or agency prevailing in the premises, the affirmative charge requested by defendant should have been given. Its refusal was, of course, error.

For this error the judgment is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, concur.


*Damages for Failure to Deliver Goods.*

