# Veitch *v.* Illinois Cent. R. R. Co.

### Injury to Freight.

(Decided April 6, 1915.   68 South. 575.)

1. **Appeal and Error; Perfecting Appeal; Time.**—Where the appeal was sued out in term time on April 1, 1914, and made returnable on April 27th, following, and the call of the division to which the cause belonged began on April 20th previous, and the record was filed on Monday, Nov. 23, the first day of the next succeeding call of that division, and the case was submitted on the regular call of the docket on the day following, the cause was submitted in time, and the motion to dismiss the appeal must be overruled.

2. **Carriers; Freight; Liability; Termination.**—A carrier is not liable, either as carrier or warehouseman, for injuries to goods after the completion of the contract of carriage and complete delivery to and acceptance by the consignee before damage occurs.

3. **Same; Joint Contract.**—One suing carriers on a joint contract must recover against all or none, unless the provisions of § 5548, Code 1907, are applicable.

4. **Same.**—Section 5548, Code 1907, is remedial, and must be liberally construed to advance the remedy it seeks to afford.

5. **Same; Connecting; Parties.**—Where a car of freight was delivered by the initial carrier to a connecting carrier to be placed on the sidetrack of the consignee, and before unloading such connecting carrier was directed by the consignee to deliver the car to a buyer, and, for that purpose, delivered the car to a terminal carrier, for delivery to the buyer on its sidetrack, the three carriers were under their joint traffic arrangement, connecting carriers within the purview of § 5548, Code 1907.

6. **Sales; Contract; Passing Title.**—In a contract of sale, title presumptively remains in the seller until delivery, and the goods tendered for delivery must be of the proper quality.

7. **Same; By Sample.**—Where the sale is by sample, and delivery is of the essence of the contract, the buyer may inspect the goods before accepting, and he may reject them and recover the price paid if the goods be inferior to the sample, or are damaged.

8. **Jury Question.**—Whether the title to goods sold by sample passed to the buyer when paid for, or whether title did not pass until the goods were actually delivered or accepted, was a question for the jury in this case.

9. **Carriers; Goods; Liability.**—Under the evidence in this case it was a question for the jury as to whether there was actionable negligence in delaying to transport the car of goods.

[Veitch v. Illinois Central Railroad Company, et al.]

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. SMITH.

Action by Carlos Veitch against the Illinois Central Railroad Company and others. There was a judgment for defendants, and plaintiff appeals. Reversed and remanded.

The complaint is against the Illinois Central, the Southern Railway, and the Louisville & Nashville Railroad, and sought judgment for damages for one car load of chops which is alleged to have been received by them as common carriers to be delivered to plaintiff at Birmingham, that they are common and connecting carriers in the state of Alabama, and that 30, days before the bringing of the suit plaintiffs gave defendants notice of the injury to the said car of chops, and made demand for payment for such injury, and that payment has not been made. The second count recites the shipment by John Wade & Son to defendant of the car of chops delivered at Memphis by the Illinois Central to be carried to Birmingham, and there delivered to Earl Bros., and that the Illinois Central, a connecting carrier, carried the car to Birmingham, delivered it to the Louisville & Nashville Railroad, who delivered said car to Earl Bros.' warehouse, in Birmingham, but that before the car was unloaded plaintiff purchased it from Earl Bros., and ordered the Louisville & Nashville Railroad Co. to deliver said car of chops to Smith Bros. & Co. warehouse, at First Avenue and 24th Street, in the City of Birmingham, the chops still being in the same car in which the shipment originated, and that the Louisville and Nashville undertook, for reward, to deliver the car, and did so by delivering it to defendant, the Southern Railway, who delivered the car to the warehouse of Smith Bros. & Co., but that in delivering it they did not safely carry and deliver, but, on the contrary, conducted themselves so carelessly about the same that the chops were damaged so as to be rendered useless or valueless. Then follows the declaration as in the first count as to each defendant being a connecting and common carrier.

CHARLES A. CALHOUN, and ROY MCCOLLOUGH, for appellant.
STOKELY, SCRIVNER, & DOMINICK, for appellee.

BROWN, J.— (1) The appeal in this case was sued out in term time on the 1st day of April, 1914, and was therefore returnable on the first Monday next after the expiration of 20 days

from suing out the appeal, or April 27, 1914. The call of the division to which this case belonged commenced on April 20, 1914. The record was filed on Monday, November, 23d, the first day of the next succeeding call, and the case was submitted the following day on the regular call of the docket. On the authority of *Cudd v. Reynolds,* 186 Ala. 207, 65 South. 41, the motion of appellee to dismiss the appeal must.be overruled.

The averments of counts 2 and 3 of the complaint show that the Illinois Central Railroad Company had fully complied with its contract with Wade & Son by a delivery of the car of chops at its final destination to Earl Bros., and that thereafter the Louisville & Nashville Railroad Company, under a different contract with the plaintiff and for a new consideration, undertook to transfer the car from the warehouse of Earl Bros. to that of Smith Bros. without showing any further connection of the Illinois Central with the shipment, or that it owed the plaintiff any duty with reference thereto, and was subject to the demurrer.

(2) A carrier is not liable either as carrier or as warehouseman for injuries to goods, no matter from what caused, after completion of its contract of carriage and complete delivery of the goods to the consignee, and an acceptance by him and subrequent assumption of full custody before the damage occurs.— *Barclay v. Southern Ry. Co.,* 6 Ala. App. 502, 60 South. 479; *Southern Ry. Co. v. Barclay,* 1 Ala. App. 348, 56 South. 26. The undisputed proof shows that the Illinois Central Railroad Company, after it complied with its contract with Wade & Son to transport and deliver the shipment to the consignee, Earl Bros., in Birmingham, had no further connection with the shipment, and that it owed the plaintiff no duty with reference thereto, and the affirmative charge requested by it was properly given.

(3) This being true, unless section 5548 of the Code is applicable to the case, the affirmative charge as to the other defendants was also proper, for the reason that the plaintiff, having sued three defendants on a joint contract or obligation made by all, must recover against all or none.—*McAnally v. Hawkins Lumber Co.,* 109 Ala. 397, 19 South. 417.

(4) The statute is remedial in its nature, and must be liberally construed so as to suppress the evil at which it is directed and advance the remedy it purposes to afford.—*Sprowl v. Lawrence,* 33 Ala. 674; *McKissick v. McClendon,* 133 Ala. 558, 32

[Veitch v. Illinois Central Railroad Company, et al.]

South. 486; *Steele v. Tutwiler,* 68 Ala. 110; *Morrow v. Woods,* 56 Ala. 6; *Ex parte Plowman,* 53 Ala. 445; 36 Cyc. 1173 (2).

(5) The goods in this case, consisting of a car load of sacked "corn chops," were shipped from Memphis, Tenn., by Wade & Sons, to be delivered to Earl Bros., Birmingham, Ala., and were carried over the lines of the Illinois Central Railroad, the initial carrier, from Memphis to Birmingham, and were there delivered to the Louisville & Nashville Railroad, to be transferred or switched over its lines to the warehouse of Earl Bros.; and under a subsequent arrangement with plaintiff the Louisville & Nashville Railroad Company undertook to transfer the car from the side tracks at Earl Bros.' warehouse to the warehouse of Smith Bros., on the side tracks of the Southern Railway Company, and in the performance of this undertaking the Louisville & Nashville Railroad Company took charge of the car and delivered it to the Southern Railway Company, and the Southern Railway Company placed it on the side tracks at Smith's warehouse. In the performance of these functions, under the joint traffic arrangements shown by the evidence in this case, the defendants were common carriers, and their roads are "connecting lines," within the purview of the statute.—*Agee v. L. & N. R. R. Co.,* 142 Ala. 344, 37 South. 680; *Mo. Pac. R. R. Co. v. Wichita Wholesale Grocery Co.,* 55 Kan. 525, 40 Pac. 899; *United States v. Northern Pacific Terminal Co.* (C. C.) 181 Fed. 879; *International & G. N. Co. v. Railroad Commission of Texas* (Tex. Civ. App.) 86 S. W.W 16; *Logan v. Central R. R.,* 74 Ga. 684.

The evil the statute purposes to correct is the shifting of responsibility of carriers when separately sued, by charging the loss or injury to some one or more of the others participating in the movement of the freight, and to that end it authorizes all such carriers to be jointly sued, providing, however, that: "If the proof shows on the trial that there was no joint liability of all the defendants, but the evidence shows the plaintiff is entitled to recover against one or more of such defendants, judgment shall be rendered accordingly against such defendant or defendants as the jury or court trying the case may ascertain to be liable, and such defendant as was not liable shall be discharged with recovery of his court costs."—Code 1907, § 5548.

(6) The evidence shows without conflict that the sale of the goods by the plaintiff to Smith Bros. was by sample, to be de-

livered f. o. b. cars, Smith's warehouse, in good condition. The witness Smith, who made the purchase from plaintiff, testified: "The car was bought by sample, and was supposed to be good chops. I bought them to be delivered at the warehouse in good condition; in other words, we bought them f. o. b. our warehouse, delivered at the warehouse." "The Southern Railway Company delivered the car there, and I rejected it."

The evidence further showed without conflict that it was raining when the car was delivered at the warehouse of Smith Bros., and that the water leaking through the roof of the car had water-soaked and damaged the corn chops, and that for this reason Smith Bros. refused to accept them. It was further shown that on the day of the sale, and before directions were given to transfer the car from Earl Bros.' warehouse to that of Smith Bros., plaintiff made an invoice or bill of the goods and delivered it to Smith Bros., and they paid plaintiff the full purchase price, and thereupon plaintiff directed the transfer of the car, and paid the switching charges therefor to the Louisville & Nashville Railroad Company. After the car was rejected, plaintiff returned to Smith Bros. the amount of money they had paid plaintiff for the chops. When delivery is a part of the contract of sale, title is presumed to remain in the vendor until there is a delivery.—*Rattary v. Cook,* 50 Ala. 353; *Oklahoma Co. v. Hamilton,* 132 Ala. 593, 32 South. 306. In such cases the goods tendered for delivery must be of the proper quality.—35 Cyc. 170 (c).

(7) When the sale is by sample and delivery is of the essence of the contract, the purchaser, before accepting delivery, has the right to inspect the goods, and if the quality of the goods is inferior to the sample, or if they are damaged, the purchaser may reject them and recover the price if it has been paid.—35 Cyc. 604 (e); *Elliott v. Howison,* 146 Ala. 568, 40 South. 1018; *Eaton v. Blackburn,* 42 Or. 300, 96 Pac. 870, 97 Pac. 539, 20 L. R. A. (N. S.) 53, 132 Am. St. Rep. 705, 16 Ann. Cas. 1198.

(8) Under the evidence in this case, the question as to whether the title passed to Smith Bros. when they paid for the goods, and the contract thereby became executed, and the subsequent transaction was a rescission, or whether the contract was executory, and the title was not to pass until the goods were delivered and accepted, was for the jury.

[Veitch v. Illinois Central Railroad Company, et al.]

(9) It is the duty of common carriers to maintain reasonable and proper facilities for the interchange of traffic, and for transferring, switching, and delivering without unreasonable delay or discrimination freight or cars destined to any point on their tracks or any connecting line (Code 1907, § 5538), and the undertaking of the Louisville & Nashville Railroad Company to transfer the car in question from the warehouse of Earl Bros. to that of Smith Bros. imposed upon it the obligation of delivering the car to connecting lines of the Southern Railway Company without unreasonable delay, and, if it failed in this, and as a proximate consequence the goods in question became watersoaked and were thereby damaged, it is liable. If, on the other hand, the Louisville & Nashville Railroad Company delivered the car to the connecting carrier without unreasonable delay, and the delivering carrier, the Southern Railway in this case, unreasonably delayed in delivering the car at Smith Bros.' warehouse, and as a proximate consequence the goods were watersoaked and damaged, a case of liability is shown.—*L. & N. R. R. Co. v. Jones,* 100 Ala. 165, 14 South. 114; *Mt. Vernon Co. v. A. G. S. R. R. Co.,* 92 Ala. 296, 8 South. 687; *Southern Express Co. v. Saks,* 160 Ala. 621, 49 South. 392.

The evidence shows without conflict that the two warehouses are within the switching limits of the Birmingham yards; that the movement of the car in question, as one of the witnesses expressed it, was merely an "across-town movement;" that the order to transfer the car was given to and accepted by the Louisville & Nashville Railroad Company at 3 p. m. February 10th, and the car was not delivered at Smith Bros.' warehouse until about 11:30 February 13th, or 68 hours after the order was given. The evidence further showed that no rain had fallen on the car up to the time the order was given, and tended to show that the goods had not been damaged on February 10th, but were in good condition; that no rain fell upon this car until about midnight of the 12th of February, or 57 hours after the order to transfer the car was given and accepted. This evidence certainly afforded an inference that the transfer and delivery of the car had been delayed for an unreasonable time, and, for that matter, in the absence of evidence explaining or excusing the delay, the delay in transferring the car from one warehouse to the other, under the evidence, was unreasonable as a matter

of law.—*C. & W. R. R. Co. v. Ludden,* 89 Ala. 612, 7 South. 471.

The result is that the court erred in giving the affirmative charge for the two last-named defendants, and the judgment must be reversed.

Reversed and remanded.