# Donegan & Tabor v. Wood.

*Action on Foreign Bill of Exchange by Holder against Payee as Indorser.*

1. *Law merchant judicially known, and presumed to exist in Louisiana.* — A bill of exchange, drawn in Alabama, on parties in Louisiana, and payable there, being a foreign bill under our statute (Rev. Code, § 1857), is governed by the law merchant, which is judicially known to our courts as a part of the common law, and which will be presumed to prevail in Louisiana as to the manner of making demand and protest, unless affirmatively shown to have been changed by statute or commercial usage.

2. *Demand of payment by notary.* — By the law merchant, a demand of payment of a foreign bill of exchange must be made by a notary public in person, and cannot be made by his deputy.

3. *Notary public in Confederate States.* — The courts of this State, as now organized, will not recognize valid the official acts of a notary public in New Orleans in February, 1862, assuming to act under the authority of the Confederate States government.

4. *Sending notice of protest by mail; judicial notice of suspension of United States mails in Louisiana, in February, 1862.* — When notice of protest of a bill of exchange is sent through the post-office, as authorized by our statute (Rev. Code, § 1850), it must be by the mails regularly established by the laws of the United States, which are judicially known to have been suspended in Louisiana prior to the 1st February, 1862.

5. *Notarial seal.* — Authorities cited, which " seem to indicate that a legible seal is a necessary part of a notary's certificate of protest and notice."

6. *Time of presentment and protest; days of grace.* — A foreign bill of exchange, dated the 30th day of January, and payable twelve months after date, being entitled to days of grace, does not fall due until the 3d day of February; and a demand and protest, made before that day are not sufficient to bind the indorser.

7. *Demurrer; specification of causes.* — " Demurrer, and joinder in demurrer, in short, by consent, because the matters pleaded furnish no bar to the action," held not a sufficient specification of the grounds of demurrer, as required by the statute. Rev. Code, § 2656.

8. *Plea denying protest or notice.* — In an action on a foreign bill of exchange, by indorsee against indorser, the complaint being in the form prescribed in the Appendix to the Revised Code (p. 673), a plea which denies that the bill was duly protested, or that the defendant had notice thereof, is substantially good.

APPEAL from the Circuit Court of Lauderdale.

Tried before the Hon. JAMES S. CLARK.

The material facts of this case are thus stated in the opinion of the court, by PETERS, J. : " This is an action in our statutory form, founded on a bill of exchange, brought by the holders and owners, against the indorser. The action was brought by Donegan & Tabor, as the surviving partners of the late firm of Patton, Donegan & Co. The bill of exchange, on which it was founded, was drawn by one J. N. Bean, on Scruggs, Donegan & Co., New Orleans, La., dated at Florence, Ala., January 30, 1861, and payable twelve months after date, to the order of George W. Foster and William B. Wood, by whom it was indorsed. The suit was originally brought against Foster and Wood ; but Foster becoming bankrupt, the action abated as to him and left Wood the sole defendant. The defendant pleaded ' non assumpsit and the gen-

[Donegan v. Wood.]

eral issue, in short, by consent, with leave to give in evidence any matter which would be a good defence if specially pleaded.' There were also three other pleas, which were demurred to, and the demurrer overruled."

[These pleas were in the following words : " 1. And said defendant, for plea to said complaint, says *actio non,* because he says he was an accommodation indorser on said bill of exchange ; and before any liability could attach to him, the plaintiffs were required to have said bill presented to the payees, and, if payment refused, to have the same protested for nonpayment, — of which they should give defendant due and legal notice without delay. And defendant avers that said bill was not presented, as required by the tenor and effect thereof, and that the pretended protest was not legally and properly made, and that no notice of said protest was given to defendant ; all of which he is ready to verify. 2. And for further plea in this behalf defendant says that at the time said bill of exchange was due and payable, to wit, on the 1st day of February, 1862, in the city of New Orleans, State of Louisiana, the said State of Louisiana was in rebellion against the government of the United States of America, having passed an ordinance of secession on or about the 26th day of January, 1861, and the government of said State, with all the offices and records, were seized by said insurrectionary government ; and all officers holding commissions were holding them under the authority of said insurrectionary government ; and the said Walter Hicks Peters, the pretended notary public, was an officer of said insurrectionary government, acting under and by authority of the same, and as such pretended to protest said bill of exchange, and not otherwise ; all which actings and doings were illegal and void ; and this said defendant is ready to verify. 3. And for further plea defendant says that at the time of the said pretended protest, to wit, on the 1st day of February, 1862, there was no post-office of the United States government in the city of New Orleans, the place where said bill of exchange was due and payable, and where said pretended protest was made ; nor was there any post-office of the Confederate States government, nor any other legally established post-office, or postal arrangement existing at the time in the State of Louisiana, or in the State of Alabama ; and so defendant says that the depositing of a notice in a place called the post-office, in New Orleans, on the said first day of February, 1862, was not, in fact or in law, a notice of said protest sufficient to charge this defendant with notice thereof. And defendant avers that said plaintiff, or said notary public, did not afterwards give him notice of said protest ; and this he is ready to verify."]

[Donegan *v.* Wood.]

" The demurrer is set out in the record in these words : ' Demurrer, and joinder in demurrer, in short, by consent, because the matters pleaded furnish no bar to the action.' After the demurrer was overruled to which the plaintiffs excepted, they took issue on all the ·pleas, and went to trial by a jury. On the trial, as appears from a bill of exceptions taken by the plaintiffs, the only evidence of protest, or notice. of protest, offered by them to fix the liability of the defendant Wood, was a paper, purporting to be a certificate of protest, made by one ' Walter Hicks Peters, a notary public, in and for the city and parish of New Orleans, State of Louisiana aforesaid, duly commissioned and sworn,' in which he stated that he made demand of payment of said bill of exchange, on the 1st day of February, 1862, *by his deputy*, P. Bienvenue. The original certificate is sent up with the bill of exceptions. In this instrument the word *United,* before *States of America,* is stricken out, and the word *Confederate* inserted in its stead ; which makes the caption read, ' Confederate States of America, State of Louisiana.' The protest purports to have been made on the *first* day of February, 1862, and bears date of that day ; and it recites, ' In witness whereof, I grant these presents, under my hand and seal of office, at the city of New Orleans, on this *first* day of February, 1862.' There is on this certificate, in the usual place of the seal, the mark of some instrument ; but it is not legible. This instrument recites, also, that the parties to the draft, of which a copy is indorsed on the instrument sent up with the bill of exceptions, 'have been duly notified of the protest thereof, by letters to them by me written and addressed, dated on the day of the said protest, and served on them respectively in the manner following, to wit: a duplicate notice for Geo. W.· Foster and W. B. Wood, directed to them respectively at Florence, Ala., were put in the post-office in this city, on this day of protest, postage prepaid.' It is also shown by the bill of exceptions that the bill of exchange sued on was drawn by J. N. Bean, and payable to the order of Foster and Wood, twelve months after date, on Scruggs, Donegan & Co. ; and it bears date Florence, Ala., January 30, 1861. The court below rejected said certificate, ' and refused to allow the plaintiffs to read said paper as evidence of protest and notice ; ' and to this ruling of the court the plaintiffs excepted.

" The verdict of the jury was in these words: ' We, the jury, find the issues for the defendant ; ' and on this verdict the court rendered judgment in favor of the defendant, for costs. From this judgment the plaintiffs appeal to this court, and they here raise two questions on the assignment of errors ; the first having reference to the overruling of their demurrer

[Donegan *v.* Wood.]

to the defendant's pleas, and the second raising the question of the legality of the protest of the bill of exchange, and the notice of protest to the defendant below."

WATTS & TROY, for appellants. — 1. The demurrer to the first plea should have been sustained. The *gravamen* of this plea is, that the plaintiffs were required to present the draft to the payees *before* its maturity, and to give notice to the defendant if payment was refused ; and this requisition and refusal constituted no defence to the suit. The other part of the plea is merely the statement of a legal conclusion, without any facts showing the illegality of the protest described in the complaint ; while the notice denied is of the " said protest," the alleged illegal and improper protest.

2. The second plea does not deny notice of the protest, and does not aver that the draft was not protested by a lawful notary. The complaint sets forth a proper protest and notice, and the plea does not negative these averments. The special facts stated do not show the invalidity of the protest, as shown by the authorities hereinafter cited.

3. The third plea is totally defective, when closely analyzed. The denial of notice is not of the protest made at the maturity of the bill, but of any notice *afterwards* given. Construing the plea most strongly against the pleader, it is an admission of the notice averred in the complaint. Whether or not there was a post-office in New Orleans, legally established, did not affect the legality of the protest ; and the plea does not deny due and legal protest at the maturity of the bill, and actual notice of the protest actually made. It only denies that any notice was given *after* the protest and notice which are averred to be illegal and void.

4. The draft declared on and offered in evidence is a foreign bill of exchange. 1 Parsons on Bills, 56, 57. The certificate of a notary is sufficient evidence of the dishonor of a foreign bill, without ancillary evidence. *Townsley* v. *Sumrall*, 2 Peters, 178. The protest of a foreign notary proves itself. *Halliday* v. *McDougall*, 20 Wendell, 84, and authorities there cited. A notary public is a public officer, and is recognized as such all over the commercial world. 1 Parsons on Notes and Bills, 634, and note *p ; Kirksey* v. *Bates*, 7 Porter, 529 ; Story on Bills, § 277. " The mere production of a protest by a foreign notary, without proof of signature, or affixing the seal, as to all foreign bills will be evidence of dishonor ; and to it all foreign courts give credit." Chitty on Bills, 362. The notary's certificate purports to be under seal, and that is sufficient. *Curry* v. *Bank*, 8 Porter, 370 ; *Roberts* v. *State Bank*, 9 Porter, 313 ; Rev. Code, § 1585. Besides, the objection to the

[Donegan v. Wood.]

notary's seal was not raised in the court below, where it might have been obviated.

5. The official acts of the notary public were not void because of his being under the Confederate government. He was at least an officer *de facto*, and his acts are valid as to third persons. *Stonum* v. *Mayo*, 2 Ala. 390. The acts and doings of the officers of the Confederate States, as to all matters of a commercial or domestic nature, not intended to aid the Confederate States in the war against the United States, are as valid as if done by officers of a " loyal state." *Texas* v. *White*, 7 Wallace, 733. This court has, in several instances, recognized the acts of the " rebel " authorities as those of a foreign government. *Hewitt* v. *Martin*, 44 Ala. 418 ; *Griffin* v. *Ryland*, 45 Ala. 688. For more than four years, the Confederate government was the regnant power in the Confederate States, excluding the dominion and authority of the United States, and was as much entitled to be recognized as a *de facto* government as that of Great Britain over a portion of the territory of Maine in 1815. *United States* v. *Rice*, 4 Wheaton, 246.

T. A. JONES, R. O. PICKETT & GEO. S. HOUSTON, *contra.* — 1. The demurrer was properly overruled, because it did not specify any ground of objection to the pleas. Rev. Code, § 2656 ; *Cotten* v. *Rutledge*, 33 Ala. 110 ; *Burns* v. *Mayor of Mobile*, 34 Ala. 485 ; *Helvenstein* v. *Higgason*, 35 Ala. 259 ; *Newsom* v. *Huey*, 36 Ala. 37.

2. Each of the special pleas was good, because it negatived a material averment of the complaint, without the proof of which the plaintiff could not recover.

3. The notary public, by whom the bill was protested, was an officer of the State of Louisiana while that State was in rebellion against the United States, and all his official acts were nullities. *Ex parte Shields & Norton*, 44 Ala. 177 ; *Noble & Brother* v. *Cullom*, 44 Ala. 534 ; *Chisholm* v. *Coleman*, 43 Ala. 204 ; *Texas* v. *White*, 7 Wallace, 700–732. The certificate not being admissible as an official document, it can only be regarded as the act of a private individual, and was not admissible evidence without extrinsic proof. 9 N. H. 558 ; 3 Wendell, 173 ; 2 Hill, 227.

4. There were no legal post-offices, postmasters, or postal lines in Louisiana in February, 1862. *Reeside* v. *United States*, 8 Wallace, 38. The court will judicially know that at that time all the post-office machinery between New Orleans and Florence was entirely suspended. Depositing a notice in the post-office at New Orleans, under these circumstances, was not sufficient to charge the defendant. *Citizens' Bank* v. *Pugh*, 19 La. Ann. 43 ; *Shaw* v. *Neal*, Ib. 156 ; *Lepeyre* v. *Robertson*, 20 Ib. 399.

[Donegan v. Wood.]

5. The plaintiffs ought to have given notice of protest immediately after close of the war. 3 Kent's Com. 153 ; Chitty on Bills, 360, 389, 422; Byles on Bills, 341, 365 ; Story on Promissory Notes, 261, 355, 367.

6. His notarial seal is indispensable to the validity of a notary's official acts. 1 Parsons on Notes and Bills, 634 ; 2 Peters, 170 ; 20 Wendell, 81 ; *Carter* v. *Burley*, 9 N. H. 558 ; *Crowley* v. *Barry*, 4 Gill, 194 ; *Rochester Bank* v. *Gray*, 2 Hill, 227 ; *Wells* v. *Whitehead*, 15 Wendell, 527 ; *Kirksey* v. *Bates*, 7 Porter, 529 ; *Fleming* v. *McClure*, 1 Brevard, 428 ; *Brigden* v. *Taylor*, 4 Har. & J. 396 ; *Nichols* v. *Webb*, 8 Wheaton, 326 ; 4 Martin's La. Ann. 283 ; *Ross* v. *Lydell*, 5 Duer, 462 ; *Dunn* v. *Adams*, 1 Ala. 530.

PETERS, J. — [After stating the facts as above.] The most important question in this cause is that which arises on the rejection of the certificate of protest by the court below. This will be first considered. If there was no evidence of protest and notice to the defendant on the trial in the Circuit Court, there will be no necessity of going beyond this ; because, whatever errors may have been committed, the verdict of the jury was correct, and the judgment of the court must follow it.

This bill of exchange, having been drawn in this State, on parties in the State of Louisiana, to be paid there, is a foreign bill of exchange. Rev. Code, § 1857. As such, it is governed by " the commercial law " applicable to such contracts. This commercial law is known to the court as a part of the common law. It is referred to by our statutes as a thing ascertained and defined. Rev. Code, §§ 1089, 1833, 1834. And this bill, being made payable in Louisiana, must be governed by the law of that State, as to the manner of making the demand and protest, whatever that may be. For the law merchant, which is a part of the common law, cannot override the local laws and commercial usages of any state which sees fit to alter it. 2 Parsons on Notes and Bills, p. 320, and cases there cited, and Edw. on Bills, p. 46. And if there is no proof to the contrary, the courts of this State will treat the law merchant of Louisiana as the same as our own. *Leavenworth* v. *Brockway*, 2 Hill, N. Y. R. 201. Such law of the foreign state, if different from our own, must be proved as any other fact, according to the modes allowed by law. *Mostyn* v. *Fabrigas*, Cowp. R. 174; also, *Thrasher* v. *Everhart*, 3 Gill & John. 234, 242; Story's Confl. L. § 638. The court cannot notice the local law judicially without such proof. *Drake & Wife* v. *Glover*, 30 Ala. 382.

2. In this case there was no evidence offered that the law

[Donegan v. Wood.]

of Louisiana governing the protest of bills of exchange was different from that of this State, or "the commercial law" referred to in the Revised Code, above cited. Then, let us apply this law as it governs such contracts in this State. Our law, which makes the certificate of demand, notice, and protest evidence, is in these words : "The certificate of a notary public, under his *hand* and *seal of office*, or of any *authorized* person, under his *hand and seal*, of the presentment for acceptance, or demand of payment, or protest for non-acceptance, or non-payment of any instrument governed by the commercial law, or of service of notice of such presentment, demand, or protest, and the mode of giving the same, and the reputed place of residence of the party to whom the same was given, and the post-office nearest thereto, is *evidence of the facts contained* in such certificate." Rev. Code, § 1089. Here, the alleged notarial certificate shows that the demand was not made by the notary himself, but "by his deputy, P. Bienvenue." The demand of payment of a foreign bill must be made by the notary public himself. Kyd on Bills, ch. 7, pp. 136, 137 ; 3 Kent, p. 9 ; *Onondaga County Bank* v. *Bates*, 3 Hill, 59 ; Chitty on Bills, pp. 217, 493, 8th ed. This is a requirement of the commercial law, which it is to be presumed prevails in Louisiana, unless the usage there is shown to be different, which has not been done. The certificate in this case does not show what the notary has done himself, but what another person has done for him. This may be true, or it may not. It is mere hearsay. It is not the officer who certifies what he has done himself and what he can record as a fact, but only what some one else has done for him. No doubt, the laws of Louisiana can authorize the notaries in that State to perform the duties of their office by deputy ; but this is not to to be presumed until it is shown, which has not been done. Then, by the law as known to the court the certificate was, for this reason, insufficient.

3. But was *Walter Hicks Peters*, the assumed notary in this case, an officer of any government known to this court ? A notary public is the officer of some known government. Very great credit is given to his acts as such, because he is an officer of some known government, entitled to recognition in the commercial world. See *Masson* v. *Lake*, 4 How. 262, 275. His certificate shows that he did not claim to be an officer of the government of the State of Louisiana as one of the " United States of America," but only an officer of Louisiana as one of the " Confederate States of America," that is, an agent of the insurrectionary organization in that State which 'assumed this name during the late Rebellion. This was a government which has not been recognized, or accredited, by any lawful author-

[Donegan *v.* Wood.]

ity. It was a mere usurpation, sustained, while it lasted, alone by military force. The officer of such a government cannot give himself credit in our courts by his seal; and without this, his certificate is not competent under the statute above quoted. It may be admitted that the ordinance of secession did not take the loyal State of Louisiana out of the Union, nor destroy it; but it did furnish occasion to overturn its legal government, and establish an illegal and unconstitutional government in its stead. This occurred in the latter part of January, 1861; and this insurrectionary government was in existence in that State, making war upon the national authority, at the time this protest purports to have been made. The mere fact that it was the *regnant* authority in the State of Louisiana at that time does not give validity or legality to its acts or its officers. The mere temporary triumph of rebellion does not give legality to the organization under which it is conducted. It is well known that what was called " the Confederate governments" in the seceding States were as much instruments of the Rebellion as the insurgent armies in the field. They were essential parts of the Rebellion itself, and were organized to give it aid and comfort. " The Confederate Government of America," so called, was of a like character, and was equally *regnant*, during the period of its existence, with those in the states engaged in the Rebellion.

In speaking of this " Confederate Government of America," Justice SWAYNE uses this language: " The Rebellion was simply an armed resistance to the rightful authority of the sovereign. Such was its character in its rise, progress, and downfall. The acts of the Confederate Congress creating the tribunal in question (the Confederate Court at Huntsville) was void. *It was as if it were not.* The court was a nullity, and could exercise no rightful jurisdiction. The forms of law with which it clothed its proceedings gave no protection to those who, assuming to be its officers, were the instruments by which it acted." *Hickman* v. *Jones*, 9 Wall. 197, 200, 201. Then a government, to give it validity in the American Union, must have something more than mere insurgent force and *regnant* power to rest upon. It must also have constitutional authority, or some recognition as a government by the rightful political power, before the courts can give force to its acts or its officers. This seems to be the foundation of the judgment in the case of *Texas* v. *White*, 7 Wall. 700. Applying these principles to the State of Louisiana, it is well known that the *legal* government in that State was overthrown, at least as early as the 26th day of January, 1861, and that a *new* insurrectionary government was erected in its stead. And as early as the 4th day of February in the same year, this *new government*

in Louisiana joined in organizing the rebel government of the so-called " Confederate States of America." And it continued in force as the *regnant* power in the State of Louisiana, and in the city and parish of New Orleans, from its institution up to the capture of that city by the federal forces, on the 25th day of April, 1862. The officers of such a government are not entitled to recognition in our courts, without some act of the legal power tending to such recognition. No such legalization was shown or attempted in this case. Without this, the notarial certificate was insufficient. *Todd* v. *Neal's Administrator*, at the present term, and cases there cited.

But it is not necessary to rely on a notary for the protest of a note or bill of exchange. If there is no *legal* notary, then it is sufficient if the protest be made out and drawn up by a respectable inhabitant of the place at which the instrument is payable, in the presence of two witnesses. But such a protest should pursue the form required by the laws or usages of the place where it is made. Story on Bills of Exchange, § 276, note 2. The certificate of such a person might be verified as his act *under his hand and seal*, and this would be sufficient without any notarial seal. Rev. Code, § 1089. Hence, a notary is not necessary, though convenient, for the purposes of commerce.

4. But the commercial law not only requires that a foreign bill of exchange shall be duly protested by a *legal* notary, or other *authorized* person, but also that notice of this protest shall be sent, with proper diligence, to the party or parties intended to be held bound, who are entitled to notice, or who have not received notice. If this is not done, such parties are discharged. *Musson* v. *Lake*, 4 How. 262, and authorities there cited. When the parties intended to be held liable on the bill or note are distant from the place of protest, the notice should be sent with due diligence ; that is, with all reasonable dispatch. And in case there is a regular mail by which it may be sent, our statute makes this method of sending it sufficient. Our Revised Code directs, that " in all cases, where notice of non-acceptance of a bill of exchange, or non-payment of a bill of exchange, promissory note, or other negotiable instrument is given by sending the same by mail, it is sufficient, if such notice is directed to the place where the person sought to be charged by such notice resided at the time of the drawing, making, or indorsing such bill, note, or negotiable instrument ; or to the post-office nearest his residence at the time, unless at the time of affixing his signature to such bill, note, or instrument, he specifies thereon the post-office to which he requires the notice to be addressed." Rev. Code, § 1850. This statute cannot be presumed to refer to any other " mails ". than

such as were regularly established by law.  As these mails are carried by persons duly qualified, and acting in performance of a duty imposed by law, the presumption is that these persons properly and regularly discharge this duty.  By reason of this presumption, it is *primâ facie* evidence that a notice sent in this way has reached .the person to whom it is addressed. And this is sufficient diligence, whether the person intended receives the notice or not.  *Knott* v. *Venable*, 42 Ala. 186. But this presumption ends when the mode of conveyance is irregular and illegal, and the mail may not be carried at all, and when it is known that the regular mail has been indefinitely suspended.  See 1 Parsons on Notes and Bills, pp. 480, 481, 482, 483, 484 ; also Story on Bills, §§ 287, 288, 300 *et seq.*  It is known to the court, as a part of the history of the nation, that the regular mails " guaranteed by law " were suspended between the city of New Orleans, in the State of Louisiana, and the town of Florence, in this State, long before the bill in this case fell due, and that they were not renewed until long after the 1st day of February, 1862, the time that the notarial certificate declares the notice in this case was " put into the post-office " at New Orleans.  See *Tyson* v. *Oliver et al.* 43 Ala. 455, 458.  The government of the United States then had no postal agents, or post-offices, used by it for the transportation of the mails in the city of New Orleans, and no mail service proceeding from that city to Florence.  If there was any other method of conveyance for such notices, to supply the place of the regular mails, this should have been shown by proof outside of the certificate itself.  It is not ground of a *primâ facie* presumption that the notice was forwarded, that is was " put into the post-office " at a point from which no regular mails were carried, as " guaranteed by law."  The proof of notice was then insufficient.  *Todd* v. *Neal's Administrator*, at the present term.

5. Another objection taken to the certificate of the supposed notary is, that it is not under a *notarial seal*.  There seems to have been an attempt to impress some mark upon the paper, on which the certificate is written, in the place of the seal ; but it is so illegible that I am not able to determine that it is a seal of any kind, or that it was intended for a seal. But, as this particular objection was not made to the instrument below, I am not confident that it was not waived.  If the objection had been made in the court below, the plaintiffs might have supplied its place with a second copy of the notarial paper, more perfectly executed.  I therefore waive any expression of opinion on this point.  The following authorities seem to indicate that a legible seal is a necessary part of a notary's certificate of protest and notice.  Story on Bills, §

[Donegan v. Wood.]

277 ; 1 Parsons on Notes & Bills, p. 634 ; *Kirksey* v. *Bates*, 7 Port. 529 ; *Townsley* v. *Sumerall*, 2 Peters, 170 ; Rev. Code, § 1084. *Sed vide* Rev. Code, § 1089, 1091.

6. Besides this, it is a settled principle of "the commercial law" that a foreign bill of exchange is entitled to certain days of grace, after the day on which it falls due, before its payment can be demanded and the bill be protested for non-payment. Edw. on Bills & Prom. Notes, pp. 517, 518, and notes; Ib. p. 47. This postpones the payment of the bill until the third day from the day it falls due. Smith's Com. Law, pp. 244, 245, 246, Holcombe & Gholson's ed. 1847 ; Story on Bills, §§ 329, 333, 335 *et seq.* In this case, the bill is dated on the 30th day of January, 1861, and is payable twelve months *after* date. This language excludes the day of the date, which would make the day of payment, exclusive of the days of grace, fall on the 31st day of January, 1862. Chitty on Bills, 370, 12th Amer. ed. Add to this the usual days of grace allowed on such an instrument, and the bill should not have been protested until the 3d day of February, 1862, instead of the 1st day of February, 1862. If there is any local usage, or law, in Louisiana, which changes this rule of the law merchant, it should have been shown by proof. This was not done. Then, in this case, the alleged notarial certificate shows that the demand of payment, and protest for non-payment, were made too soon. Such a protest is insufficient to bind the indorser. 1 Parsons's Notes & Bills, p. 394 *et seq. ; Bank of Washington* v. *Triplett*, 1 Peters, 25, 31, 32 ; *Brown* v. *Turner*, 11 Ala. 752 ; *Savings Bank of New Haven* v. *Bates*, 8 Conn. 505 ; *Dollfus* v. *Frosch*, 1 Denio, 367. The notarial paper above referred to was, in this view of it, wholly insufficient to fix the liability of the defendant Wood. It was, therefore properly rejected by the court.

7. It now remains to dispose of the demurrer to the *second*, *third*, and *fourth* pleas, or those pleaded by Wood alone. These pleas do not seem to have been drawn with any very great deliberation and care. The demurrer is a general demurrer to all three of the pleas. Our statute requires that "no demurrer in pleading can be allowed but to matter of substance, which the party demurring *specifies ;* and no *objection* can be taken, or allowed, which is not *distinctly stated* in the demurrer." Rev. Code, § 2656. The demurrer is in these words : "Demurrer, and joinder in demurrer, in short, by consent, because the matters pleaded furnish no bar to the action." Such demurrer does not come within the requisitions of the statute. It merely declares that the pleas are insufficient in law. This is not enough. It should state specifically the ground of objection, why the pleas are insufficient, so that the

[Neilson v. Slade.]

court could see at once what amendment, if any, could be made. Such demurrers are not to be allowed, and it is the duty of the court to overrule them. *Robbins* v. *Mendenhall*, 35 Ala. 722; *Helvenstein* v. *Higgason*, 35 Ala. 259; *Burns* v. *Mayor, &c., of Mobile*, 34 Ala. 485; *Cotten* v. *Rutledge*, 33 Ala. 110; *Harrison* v. *Nolin*, 41 Ala. 256; *State, use &c.* v. *Gardner*, 45 Ala. 46.

8. But are the pleas bad? I think not; though the matters they contain go much beyond what is required in stating the facts. The plea is an answer to the complaint, or any *material* allegation or fact of the complaint, which, if untrue, would defeat the action. The traverse may deny all the facts alleged, or any particular material fact. 1 Chitty Pl. p. 525; *Brander & Brander* v. *Denrick*, 20 John. R. pp. 404, 406, *opinion by* WOODWORTH, J. Two of the material allegations of the complaint are: (1) " the said bill, not being paid at maturity, *was duly protested;* (2) of which the defendant *had due notice.*" These facts are so denied in the pleas that a material issue can be taken thereon. This is enough. Rev. Code, § 2638. If the plaintiffs had wished, in the court below, to strike from the defendant's pleas other allegations of facts which were non-essential, they should have assailed them by *specific* objections. But, by sustaining these pleas, it is not intended to recommend them as precedents in the practice of the courts of the State. It is possible that they might have been more technically drawn up.

For the reasons above stated, the judgment of the court below is affirmed.