# Southern Railway Company *v.* Renes.

## *Injury to Passenger.*

(Decided April 22, 1915.   Rehearing denied June 3, 1915.
68 South. 987.)

1. *Carriers; Terminal Carriers; Through Passage.*—The mere fact that a through passage was sold over connecting railroad lines does not show such a relation between them as to render the terminal carrier prima facie liable for any breach of duty or contract on the part of the receiving carrier.

2. *Same; Goods; Liability.*—The peculiar responsibility of a common carrier for goods shipped does not devolve on a connecting carrier so as to relieve the receiving carirer until the receiving carrier has delivered the goods to the connecting carrier with directions for their shipment, the place of destination, and to whom consigned; until this is done, the relation of common carrier is not established between the shipper and the connecting carrier.

3. *Same; Delivery to Connecting Carrier.*—The evidence examined and held insufficient to show a tender and delivery of the corpse to the defendant as a connecting carrier by the receiving carrier for immediate transportation over its line on the train that carried the shipper, plaintiff in this case.

4. *Same; Burden of Proof.*—Where the action was against the connecting carrier for damages for a failure to carry a corpse on the train on which plaintiff rode, the burden of proof was on the shipper to show a tender or delivery of the corpse by the initial carrier to the defendant within a reasonable time for transportation on the train on which plaintiff traveled.

5. *Witnesses; Not Understanding English; Statement by.*—In civil actions as explanatory of a witness's answer to questions, it is proper

[Southern Railway Company v. Renes.]

for the jury to be informed of such witness's deficiency, as not fully understanding or speaking English.

6. *Same.*—The educational deficiencies of a plaintiff not being relevant to the issues in an action against a connecting carrier for delay in transporting a corpse, it was error for the court to permit the father of deceased, plaintiff in this case, to state that he was not an educated man and had not had the benefit of schooling.

7. *Carriers; Connecting; Presumption; Delay.*—In the absence of opposing evidence the presumption that damages to or loss of the goods shipped over connecting lines of railway occurred on the line of the connecting carrier, based on the idea that a condition in its nature continuous, has, in fact, continued, is without application to delay in the shipment of a dead body over connecting lines, where there was no showing that such body was actually delivered to the connecting carrier in time for a proper and speedy shipment.

8. *Same; Special Contract.*—Where the complaint charged that the body was tendered to the defendant, a connecting carrier by the initial carrier, in time to be carried on the same train with plaintiff, and the evidence showed that the body was removed from the train of the initial carrier upon its arrival at the point of connection with the connecting carrier, and was placed on a truck, and that within five or ten minutes thereafter, defendant's train left the station, it could not be presumed that defendant was informed of the presence of the body within such time, and of its own duties under plaintiff's contract with the initial carrier to give it immediate transportation on the same train with plaintiff; the action not being simply one for an unreasonable delay in transportation, but for breach of an express contract to carry on the same train with plaintiff, which bound the plaintiff to prove the special breach alleged, a duty not satisfied or carried out by any presumption of a timely tender to the connecting carrier.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Action by John E. Renes against the Southern Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Transferred from Court of Appeals under Acts 1911, p. 450, § 6

Count 1 is as follows: "The plaintiff claims of the defendant $3,000 damages, for that heretofore, on the 5th day of March 1913, plaintiff's minor son, Willis Renes, died in Philadelphia, Pa., and, heretofore, to wit, on the 6th day of March, 1913, plaintiff, being in said Philadelphia, caused said corpse to be sent to Washington, D. C., on the same train on which plaintiff traveled from said

Philadelphia to Washington, and plaintiff paid to the defendant, who was a common carrier of passengers and of corpses, two full fares for the transportation by the defendant of himself and said corpse on the same train from said Washington to Birmingham, Ala., and said corpse was tendered to defendant after plaintiff had paid said fares and in time for defendant to have taken and carried said corpse from said Washington to said Birmingham on the same train on which plaintiff was carried by defendant from said Washington to said Birmingham, and defendant received said corpse under and by virtue of the payment of said fares, which plaintiff had paid, and undertook to carry same promptly to said Birmingham, but defendant did not carry said corpse promptly to said Birmingham, and as a proximate consequence thereof said corpse was not carried on the same train upon which plaintiff left said Washington for said Birmingham, and plaintiff was caused to leave said train upon which he was being carried by defendant from said Washington to said Birmingham a long distance short of said Birmingham, to wit, at Charlotte, N. C., where the plaintiff awaited said corpse, and plaintiff was put to great trouble, inconvenience, and expense in or about waiting for said corpse at said Charlotte, N. C., and to great trouble, inconvenience, and expense in or about bringing said corpse from said Charlotte to said Birmingham, and in great trouble, inconvenience, expense, vexation, annoyance, and harassment and great mental pain and anguish in or about the delay of said corpse, and in or about said corpse not being upon the same train upon which plaintiff left said Washington, and was prevented from showing the marks and tokens of respect and affection for his said deceased son, and was delayed a long time in getting said corpse to said Birmingham, and to his wife, the

mother of said son, and suffered great mental pain and anguish, and great humiliation, vexation, harassment, and annoyance, and the funeral of said corpse and the burial thereof was greatly delayed.

"Plaintiff avers that defendant negligently conducted itself in or about carrying said corpse from said Washing to said Birmingham, and as a proximate consequence of said negligence plaintiff suffered said injuries and damage."

In support of this complaint complainant testified substantially as follows: His son died in a Philadelphia hospital, and he took passage with the corpse from the West Philadelphia station at 1:25 p. m. March 6th over the Pennsylvania Railroad on a train designated as the "Birmingham Special." Plaintiff bought two tickets just alike, for himself and the corpse, and the agent told him that this train would go straight through, and would arrive at Birmingham, his destination, at 4:45 p. m. the next day, and that the corpse would go through without changing cars. Plaintiff arrived at Washington about 5:30 or 6 p. m. and did not change cars, and his train left Washington over the Southern Railway in 10 or 15 minutes. As it was pulling out he saw a coffin on a truck standing on the ground, and, suspecting it was his son, he informed the conductor, who reported to him that his son's corpse was not on the train. He told plaintiff he would telegraph about it from Alexandria, Va., which he did, and then told plaintiff to get off at Charlotte, N. C., and wait for the coffin. Plaintiff got off at Charlotte about 5 a. m. next morning, and about 8, or 3 hours later, the corpse arrived, and was transferred in about half an hour to a local train to Atlanta, on which plaintiff accompanied it. At Atlanta they transferred to another train, and reached Birmingham somewhere near 11 p. m. March 7th. It appears that,

if the Birmingham Special on which plaintiff embarked at Philadelphia had gone through on schedule time, it would have reached Birmingham at 4:45 p. m. March 7th. It appears also that plaintiff left Washington on the second section of Southern Railway train No. 29, and, had his journey not been interrupted, he would have reached Birmingham at 8:10 p. m. March 7th. By written instructions given for defendant the trial judge practically limited the damages recoverable to plaintiff's delay and lost time on the journey and mental suffering resulting from a temporary separation from the corpse. Defendant requested the affirmative charge. There was judgment for plaintiff in the sum of $1,000.

STOKELEY, SCRIVNER & DOMINICK, for appellant.

HARSH & FITTS, for appellee.

SOMERVILLE, J.—The gravamen of the complaint is that the defendant was negligent in transporting the corpse of plaintiff's son from Washington to Birmingham, in that it was not carried to its destination on the same train with plaintiff, as was agreed to be done. This breach of duty is predicated on the allegation of the complaint that the "corpse was tendered to defendant after plaintiff had paid said fares and in time for defendant to have taken and carried" it on the same train upon which it carried plaintiff.

(1) The fact that a through passage is sold over a receiving and connecting line does not show such a relation between the lines as to render the terminal line prima facia liable for any breach of contract or duty on the part of the receiving line.—*M. & W. P. R. Co. v. Moore*, 51 Ala. 394; *K. C. M. & B. R. Co. v. Foster*, 134 Ala. 255, 32 South. 773, 92 Am. St. Rep. 25; *So. Ex. Co. v. Saks*. 160 Ala. 621, 49 South. 392.

"The responsibility peculiar to a common carrier is not devolved on the next connecting carrier, until the receiving carrier has delivered the goods to the former with directions for their shipment, the place of destination, and to whom consigned. Until this is done, the relation of common carrier is not established between the shipper and the connecting carrier."—*Mt. Vernon Co. v. A. G. S. R. Co.*, 92 Ala. 296, 8 South. 687. To relieve the first carrier from further liability and charge the second carrier, it is necessary that the goods be delivered or properly tendered by the first carrier to the second.—6 Cyc. 486, 487.

(3) The only evidence in this case of a delivery of the corpse by the receiving carrier to the defendant, as the terminal carrier, is found in the plaintiff's statement that, as the Southern train was leaving the depot at Washington, he saw the coffin on a truck. In the absence of any evidence showing a course of dealing between these carriers by which placing and leaving a coffined body on a depot truck in the neighborhood of the terminal carrier's track constituted a tender or delivery to it for immediate transportation over its line, no inference can justly arise of a default on its part.— *Mt. Vernon Co. v. A. G. S. R. Co.*, 92 Ala 296, 299, 8 South. 687; *M. & E. Ry. Co. v. Kolb*, 73 Ala. 386, 49 Am. Rep. 54.

(4) The burden of proof was upon the plaintiff to show a tender or delivery of the corpse by the receiving carrier to the terminal carrier in reasonable time for transportation on plaintiff's train, as an essential foundation for the breach of duty charged; and, failing to do this, as was the case, a peremptory instruction should have been given for the defendant, as requested.

(5)   Where a witness does not fully understand the English language, as by reason of its not being his mother tongue, it is of course proper for the jury to be informed of his deficiency in this regard in explanation of his responses to the questions propounded to him. The trial court, therefore, did not err in allowing the plaintiff, who is evidently of foreign birth, to state that he had sometimes had difficulty in expressing himself in English.

(6)   We think, however, that the court erred, with probable predjudice to the defendant, in allowing the plaintiff to state that he "was not an educated man, and did not have the benefit of the schools." It would be unfortunate, and, indeed, intolerable, for the element of a plaintiff's educational deficiency to be injected into case like this, without relevancy to the issues, and with a large capacity for the creation of a predjucial sympathy which might find ready, even if unconscious, expression in a verdict carrying damages chiefly for a sentimental injury. Its admission cannot further the ends of justice, and it ought always to be excluded, unless the peculiar issues of a particular case should render it relevant.

It is unnecessary to pass upon the merit of the motion for a new trial, founded on the charge that the verdict is greatly excessive in amount, in view of our other conclusions.

For the errors, noted the judgment will be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.

[Southern Railway Company v. Renes.]

ON REHEARING.

SOMERVILLE, J.—It is insisted that the defendant was not entitled to the affirmative charge in this case because a presumption must be indulged, in the absense of opposing evidence, that any delay in the transportation of the body occurred on the line of the terminal carrier, and that it must affirmatively acquit itself of negligence in that behalf.

(7) The authorities relied upon relate only to presumed damage or loss where the goods are actually received by the terminal carrier.—*So. Ex. Co. v. Hess*, 53 Ala. 19, *So. Ex. Co. v. Saks*, 160 Ala. 49 South. 392, and other cases. The rule in those cases, is, indeed, of universal recognition. It is justly based upon the idea that a condition which is in its nature continuous has, in fact, continued.—*C. of Ga. Ry. v. Chicago Varnish Co.* 169 Ala. 289, 290, 53 South. 832.

From the rule of presumed loss or damage plaintiff's counsel would deduce the rule of presumed delay by the terminal carrier. But the reason which supports the one rule does not logically support the other, and it has been held that the plaintiff must show that a delay complained of was due to the fault of the defendant terminal carrier.—*E. T. etc., Ry. Co. v. Johnson*, 85 Ga. 497, 11 S. E. 809; *Almand v. Ga. R. & B. Co.*, 95 Ga. 775, 22 S. E. 674. The latter case is cited with approval in 6 Cyc. 491, note 40. The opposing view seems to have been adopted in the case of *Harper Funiture Co. v. So. Ex. Co.*, 144 N. C. 639, 57 S. E. 458, 12 Am. Cas. 942, though the conclusions was based in part on certain facts judicially noticed by the court.

(8) But, whatever we might hold as to that, there is in this case, under the pleading and proof, no room for the application of the presumption invoked. The complaint

charges that plaintiff paid defendant two full fares to transport himself and the body from Washington to Birmingham on the same train, and alleges that after such payment of fares the body was tendered to defendant in time to be carried on the same train with plaintiff from Washington to Birmingham. After the arrival of the Pennsylvania train, the body was removed from its car and placed on a truck, and within ten minutes the Southern train left the station. It does not appear, and it cannot be presumed, that within that brief space of time the defendant carrier was informed of the presence of the coffin and the duty of immediate transportation on the same train with plaintiff, coupled with a timely tender for that purpose. The question is not simply one of unreasonable delay in transportation, but, specially, the breach of an express agreement to carry on the same train with plaintiff. The evidence locates the time and place of the failure, and plaintiff was bound to prove the special breach alleged. Certainly no specific presumption of a timely tender to defendant for this particular undertaking can arise in such a case as this.

Counsel criticize with some warmth the ruling that the admission of evidence that plaintiff was not educated in "the schools" was reversible error. We think it must be apparent to the unbiased mind that the absence of such education does not tend to show that an adult person cannot or does not understand the meaning of the ordinary speech of the country in which he lives. If we justified its admission in this case, it would of necessity be admissible in every case in which a party is a witness, and such a practice cannot be sanctioned.

We reaffirm, with emphasis, all that we have said on this subject.