(76 South. 288)

DEAVORS v. SOUTHERN EXPRESS CO.

(6 Div. 355.)

(Supreme Court of Alabama.   June 21, 1917.)

1. DEAD BODIES ⬤➡9—RIGHTS OF RELATIVES.

It is well-settled law in this state that there is at least a quasi legal right in, to, or concerning dead bodies, which the courts will recognize and protect by proper action.

[Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. §§ 13, 14.]

2. CARRIERS ⬤➡135 — TRANSPORTATION OF DEAD BODIES—RIGHTS OF BROTHER OR SISTER.

A brother or sister may, in a proper case, recover damages as for mental pain and anguish against a common carrier, resulting from its negligence or breach of contract in the carrying or delivering of a corpse.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 557–559, 599–602, 603½–604½.]

3. COMMERCE ⬤➡33—INTERSTATE SHIPMENT OF DEAD BODIES—NEGLIGENCE—RECOVERY.

Plaintiff sued defendant carrier to recover damages for negligence in the carrying or delivering of the corpse of her brother consigned to her in Alabama and shipped from Kansas. Defendant had no agent at the place of delivery, and the coffin containing the corpse was placed on a truck and wheeled under a shelter or shed, but got wet from rain blowing in or breaking through the top thereof. Held, that the damages sustained were the consequences of the breach of the contract for an interstate shipment governed by the federal laws, and therefore plaintiff, having failed to show any damage other than mental anguish, could not recover.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81.]

4. TORTS ⬤➡2—TORTS INDEPENDENT OF CONTRACT—WHAT LAW GOVERNS.

Torts not dependent upon contract are governed by the laws of the state in which the tort is committed.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 2.]

5. COMMERCE ⬤➡8(12) — INTERSTATE SHIPMENTS—WHAT LAW GOVERNS.

The rule that a contract for interstate shipment of goods is governed by the law of the place where the contract is made has no application, where the subject-matter of the contract is one of national cognizance, and Congress has enacted laws for its complete regulation.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5.]

6. CARRIERS ⚙️134—NEGLIGENCE OF CARRIER.
Where a sister sued a carrier for damages in
allowing a coffin containing the body of her
brother to remain on the platform in the rain,
evidence that she had agreed with her brother,
who paid express charges, to pay a part thereof,
showed no loss in property or estate, authorizing
any recovery other than for mental anguish.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 588–592, 607.]

Appeal from Circuit Court, Walker County;
J. J. Curtis, Judge.

Action by Alta Deavors against the Southern Express Company. The court directed a
verdict for defendant, and from the judgment entered thereon, plaintiff appeals. Affirmed.

Leith & Gunn, of Jasper, for appellant.
Bankhead & Bankhead, of Jasper, for appellee.

MAYFIELD, J. Appellant sued appellee
as a common carrier, to recover damages on
account of negligence in the carrying or delivering of the corpse of her brother, which
was consigned to her at Carbon Hill, Ala.
The corpse was shipped from Chanute, Kan.
The receiving carrier was the Wells Fargo
Express Company, which carried the corpse
to Springfield, Mo., and there delivered it to
appellee, and appellee carrier delivered the
same to consignee or her agent at Carbon
Hill. Whether or not appellant, by herself
or an agent, made any contract with either
the receiving or the delivering carrier, does
not appear; but it does appear that the shipment was consigned to her. The charges for
the shipment, together with the costs of casket, shrouding, etc., were paid by a brother
of appellant, though it appears that appellant agreed with her brother and mother to
pay a part of the charges. Shipment was
made C. O. D., including all the charges
above set out. There was nothing to show
that there were any excess charges or overcharges. The alleged negligence consisted in
allowing the coffin and shrouding to get wet,
and thereby letting the corpse get wet.

Appellee seems to have had no night agent
at Carbon Hill, and the train which carried
the corpse to that place arrived there at about
4 o'clock a. m. There being no one there to
receive it, the coffin containing the corpse
was placed on a truck and wheeled under a
shelter or shed; but it was there allowed to
get wet from rain blowing in under the shelter or leaking through the top thereof. The
evidence was in dispute whether coffin,
shrouding, and corpse was wet, and, if it was,
whether or not it was wet when received by
the consignee or her brother. The deceased
was a young man not more than 21 years of
age, and unmarried. He left a mother, three
or four brothers, and three or four sisters,
one of whom is appellant. The trial was had
on the general issue, and the court, after the
evidence was closed, directed a verdict for defendant, and from the judgment entered
thereon plaintiff prosecutes this appeal.

Opinion.

The law as to the rights and remedies of
the living as to the bodies of their dead, is
not as certain as death itself. The Supreme
Court of Georgia, per Lumpkin, J., has thus
spoken on the subject:

"A corpse in some respects is the strangest
thing on earth. A man who but yesterday
breathed, and thought, and walked among us
has passed away. Something has gone. The
body is left still and cold, and is all that is
visible to mortal eye of the man we knew.
Around it cling love and memory. Beyond it
may reach hope. It must be laid away. And
the law—that rule of action which touches all
human things—must touch also this thing of
death. It is not surprising that the law relating to this mystery of what death leaves behind cannot be precisely brought within the letter of all the rules regarding corn, lumber, and
pig iron. And yet the body must be buried or
disposed of. If buried, it must be carried to
the place of burial. And the law, in its allsufficiency, must furnish some rule, by legislative enactment or analogy, or based on some
sound legal principle, by which to determine
between the living questions of the disposition
of the dead, and the rights surrounding their
bodies. In doing this, the courts will not close
their eyes to the customs and necessities of
civilization in dealing with the dead, and those
sentiments connected with decently disposing
of the remains of the departed which furnish
one ground of difference between men and
brutes." L. & N. R. R. Co. v. Wilson, 123 Ga.
63, 64, 51 S. E. 25, 3 Ann. Cas. 128.

Lord Coke said that the burial of the dead
is of ecclesiastical cognizance; that the heir
or personal representative may have an action as for the shroud, coffin, monument, etc.,
yet he has none as for the corpse, or its ashes. While it has likewise been said by American courts and text-writers that dead bodies
are not the subject of property, and that after
burial the body becomes a part of the earth
to which it is committed, yet all courts
recognize quasi property rights in and to the
corpse, for the purposes of decent and proper
burial, the protection of the ashes, and the removal thereof in proper cases. The courts,
including this one, also recognize and enforce
the rights of next of kin, and of near relatives, such as father, mother, brothers, sisters, husband, wife, parent, or child, as to the
obsequies and burial of their dead.

[1] Actions for damages as for mental pain
and anguish have been allowed for negligence
in the sending and delivering of telegraphic
messages concerning the death of such near
relatives, whereby the living, bereaved relative was prevented from being present at
the funeral and burial, and also against common carriers, in carrying and delivering dead
bodies. Whatever the law of England once
was, it is now well-settled law in this state
that there is at least a quasi legal right in,
to, or concerning dead bodies, which the
courts will recognize and protect by proper
action. There is, however, a well-recognized

⚙️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

distinction between the rights of the living as to the corpse of their dead before burial, and such rights thereafter—that is, after the body becomes a part of the earth in which it is buried. With this latter class of rights we are not concerned and are not now dealing; those rights were dealt with in the case of Bessemer Land Co. v. Jenkins, 111 Ala. 135, 18 South. 565, 56 Am. St. Rep. 26. The rights we are now dealing with were recognized in the cases of Southern Railway Co. v. Renes, 192 Ala. 620, 68 South. 987; Birmingham Transfer & Traf. Co. v. Still, 7 Ala. App. 556, 61 South. 611. Similar rights as to damages for mental pain and anguish have been recognized in many cases against telegraph companies, involving negligence in the handling of messages relating to deaths, burials, and funerals of near relatives. See Merrill's Case, 144 Ala. 618, 39 South. 121, 113 Am. St. Rep. 66; Krichbaum's Case, 145 La. 409. 41 South. 16; Long's Case, 148 Ala. 202, 41 South. 965; Westmoreland's Case, 150 Ala. 654, 43 South. 790; Beal's Case, 159 Ala. 249, 48 South. 676; In Still's Case, 7 Ala. App. 563, 61 South. 613, the Court of Appeals quoted from the Kentucky court the following:

"The most tender affections of the human heart cluster about the body of one's dead child. A man may recover for any injury or indignity done the body, and it would be a reproach to the law if physical injuries might be recovered for, and not those incorporeal injuries which would cause much greater suffering and humiliation." Douglas v. Stokes, 149 Ky. 506, 509, 149 S. W. 849, 850, 42 L. R. A. (N. S.) 386, Ann. Cas. 1914B, 374.

In this Kentucky case it was held that the parent has the right to recover damages for mental pain and suffering caused by the unauthorized use of a photograph of plaintiff's nude deformed minor children, as constituting a violation of the parent's right of privacy of the bodies of his dead children. The opinion in Still's Case, discussing the same subject, says:

"Although, strictly speaking, there is no right of property in a dead body, the right of a parent, who has the custody of the remains of his dead child for burial, to recover for the injury to his feelings by any indignity purposely or wrongfully perpetrated upon the corpse of the child has been directly or by proper analogy recognized in many well-considered cases"—citing many authorities.

Also that:

"In an action of quare clausum fregit to recover damages for the unlawful disturbance of the body of a child, our Supreme Court has held that the parent can recover damages for injury to the feelings occasioned thereby. Bessemer Land & Improvement Co. v. Jenkins, 111 Ala. 135, 18 South. 565, 56 Am. St. Rep. 26." 7 Ala. App. 564, 61 South. 614.

And the same is undoubtedly true as to the corpse of one's brother or sister.

"In the case of Gatzow v. Buening, 106 Wis. 1, 81 N. W. 1003, 49 L. R. A. 475, 80 Am. St. Rep. 1, * * * it was held that exemplary damages might be recovered for depriving the plaintiff of the use of a hearse and stopping it as he was burying the body of the child, although it was held in that case that as there was no actual damage or physical injury there could be no recovery for mental suffering." 7 Ala. App. 566, 61 South. 614.

In Brady's Case (against Alabama City, G. & A. Co.), 160 Ala. 615, 620, 49 South. 351, 353, under conditions therein set forth, this court held that a widow might maintain an action as to the transportation of the corpse of her husband; the court saying:

"We have no doubt that, in a case of this kind, the widow, upon proof of negligence or of breach of duty on the part of the defendant, might recover for mental anguish, if any, suffered on account of the delay or the failure in the transportation of the remains of her husband. L. & N. R. R. Co. v. Hull, 113 Ky. 561, 68 S. W. 433, 57 L. R. A. 771."

[2] It therefore follows that a brother or sister may, in a proper case, recover damages as for mental pain and anguish, against a common carrier, the result of negligence or of the breach of a contract, in or about the carrying or delivery of the corpse of the deceased; but of course the case must be brought under circumstances and facts which impose liability on the one hand, and confer rights on the other, as declared and recognized in the cases above cited. The mere fact that there might be negligence or a breach of contract as to carrying of a dead body would not give each brother or sister, or next of kin, a separate action to recover damages as for mental pain and anguish.

[3] The trial court directed a verdict for the defendant in this case upon the theory (or it is so stated in brief of counsel) that this plaintiff suffered no other actual damages, and that she could not therefore recover as for mental anguish alone. In other words, that plaintiff's case fell within the rule of Howle's and Northcutt's Cases. No damage in estate being alleged, the mental suffering of the wife, on account of disappointment in not being met at the train by her husband and on account of nausea caused by having to carry her handbag and child from the car to the waiting room, without other damages, will not support an action in tort for failure to deliver a telegram. W. U. Tel. Co. v. Howle, 156 Ala. 331, 47 South. 341. Where one's relation to the contract is not disclosed to the company, and did not appear from the telegram (it having been sent by another as an undisclosed agent), the plaintiff cannot recover for mental anguish resulting from delay in delivery, this causing a failure of relatives to attend a funeral. W. U. Tel. Co. v. Northcutt, 158 Ala. 539, 48 South. 553, 132 Am. St. Rep. 38.

[4] It is unnecessary for us to decide whether or not the trial court assigned the proper reason for his ruling, if the ruling itself was correct. It appears without dispute that the contract of shipment of the corpse in question, no matter with whom made, was a contract for an interstate shipment; and that the law of the contract, or the law of the rights of the parties growing out of the breaches thereof, and of the duties imposed by such contract, is federal, and not state,

law. See W. U. Tel. Co. v. Hawkins, 73 South. 973,[1] and cases there cited. Not only is such a contract governed by the federal statutes, but it is to be so construed, in reference to the law of torts, in dealing with torts growing out of the contract, or (as in this case) with mere breaches of duty growing out of, or depending solely upon, the contract. Torts not dependent upon the contract, of course, would be governed by the laws of the state in which the torts were committed. While the Hawkins Case was against a telegraph company, there is no doubt that the federal statutes must apply to interstate shipments by express companies as well as to those by other carriers. As shown by citation of authorities in that case, as decided by this court, following the federal courts, damages as for mental pain and anguish are not recoverable, even in a state court, if suffered in consequence of breaches of contracts, or of breaches of duties growing out of contracts, relating to interstate shipments. If damages as for mental anguish are not recoverable, as for breaches of contracts, or breaches of duties growing out of contracts, for the sending of interstate telegraphic messages, then surely such damages are not recoverable as for 'breaches of contracts, or breaches of duties growing out of contracts, for interstate shipments. We know of no reason for making a distinction between the two classes of interstate contracts.

If the action were for an independent tort, not related to or dependent upon the contract, to afford plaintiff a right of action, then of course the laws of Alabama, and not those of Kansas, nor the federal statutes, would control. While there is a valid distinction as to which of several laws controls, when the action is ex contractu, and when it is ex delicto, yet the reason for the distinction fails if the only difference be in the mere form of action. If the action be in case, as for the breach of a duty growing· out of the contract, there is no reason apparent to us why a different law should apply from that which would apply if the action were assumpsit, as for a breach of the same contract. The plaintiff has his choice, in such case, to sue in assumpsit or in case, or he may now join two counts, one in assumpsit and one in case, in the same complaint. The question which of two conflicting laws should apply ought not to be left to the determination of one of the parties after the breaches have occurred. Moreover, the line of demarcation between actions in assumpsit, as for breaches of contract, and those in case, as for breaches of duty growing out of, or depending upon, the same contract, is very shadowy; it is nearly all umbra.

In actions as for failure or delay in· sending or delivering telegrams, this difficulty of distinguishing between the two forms of action has been repeatedly considered and discussed. It is often very difficult, if not impossible, to determine whether complaints for failure to deliver, or delay in delivering, telegraphic messages, are ex contractu or ex delicto. It has been held that the allegation "that the defendant failed willfully and wantonly to deliver a telegram, agreed to" cannot operate to change the character of the action from one ex contractu to one ex delicto. W. U. Tel. Co. v. Rowell, 153 Ala. 295, 45 South. 73; Manker v. W. U. Tel. Co., 137 Ala. 292, 34 South. 839; W. U. Tel.·Co. v. Krichbaum, 132 Ala. 535, 31 South. 607; Waters' Case, 139 Ala. 652, 36 South. 773. The distinctions and differences between the two actions were pointed out by this court in the case of White v. Levy, 91 Ala. 179, 8 South. 563, and this decision has been frequently followed. The subject is also discussed at some length by the Minnesota court in the case of Beaulieu v. G. N. Ry. Co., 103 Minn. 47, 114 N. W. 353, 19 L. R. A. (N. S.) 564, 14 Ann. Cas. 462, wherein there was a difference of opinion among the judges. That case is very similar to the one now under consideration. See, also, Lesch v. Great Northern R. Co., 97 Minn. 503, 106 N. W. 955, 7 L. R. A. (N. S.) 93; Pennsylvania Steel Co. v. Wilkinson, 107 Md. 574, 69 Atl. 412, 16 L. R. A. (N. S.) 203; Sanderson v. Northern Pac. R. Co., 88 Minn. 162, 92 N. W. 542, 60 L. R. A. 403, 97 Am. St. Rep. 509.

[5] The rule as to conflict of laws touching interstate shipments was well stated by this court in the case of Southern Railway Co. v. Harrison, 119 Ala. 539, 544, 24 South. 552, 557, 43 L. R. A. 385, 387, 72 Am. St. Rep. 936, 940, 941, as follows:

"The general rule of law, it is true, is that a contract is governed, as to its nature, obligation, validity, and interpretation, by the law of the place where it is made, unless the parties have in view some other law, or unless it is to be wholly performed in some other place, in which case the law of place of performance, or the law which both parties had in view, must govern. Peet v. Hatcher, 112 Ala. 514 [21 South. 711] 57 Am. St. Rep. 45; Cubbedge, etc., Co. v. Napier, 62 Ala. 518; Donegan v. Wood, 49 Ala. 242, 20 Am. Rep. 275. And the weight of authority is that this rule requires a contract for the transportation of goods by a common carrier from one state or country to another to be governed by the law of the place where it is made and where the performance begins, unless the parties, when entering into the contract, clearly manifest a mutual intention that it shall be governed by the law of some other state or county. Wharton on Conflict of Laws, § 471; Hutchinson on Carriers, §§ 140–144; Liverpool, etc., Steam Co. v. Phenix Ins. Co., 129 U. S. 397 [9 Sup. Ct. 469, 32 L. Ed. 788]; McDaniel v. Chicago, etc., Ry. Co., 24 Iowa, 412; Hazel v. Chicago, etc., Ry. Co., 82 Iowa, 477 [48 N. W. 926]; Pennsylvania Co. v. Fairchild, 69 Ill. 260; Meuer v. Chicago, etc., Ry. Co., 5 S. D. 568 [59 N. W. 945, 25 L. R. A. 81] 49 Am. St. Rep. 898; Fonseca v. Cunard S. S. Co., 153 Mass. 553 [27 N. E. 665, 12 L. R. A. 340] 25 Am. St. Rep. 660; Potter v. The Majestic, 60 Fed. 625 [9 C. C. A. 161, 23 L. R. A. 746]. But this rule can have no application where the subject-matter of the contract is one of national cognizance and Congress has assumed exclusive cognizance of it by enacting a law for its complete regulation. In such case, the parties must be presumed to contract

[1] 198 Ala. 682.

with reference to the act of Congress and its effect on the subject-matter, and not with reference to the law of the state where the contract was made, and they cannot, by agreement or otherwise, make any other law the applicatory law in the determination of the nature, validity, or interpretation of the contract."

If, however, the federal statute did not apply and control in case (contrary to our holding), then the laws of Kansas, where the contract of shipment was made, would apply; and under the laws of that state damages as for mental suffering in a case like this are not recoverable. West v. Western Union Co., 39 Kan. 93, 17 Pac. 807, 7 Am. St. Rep. 530, and note. If this action had been for an independent tort committed in this state, or under a contract of this state not governed by the federal statute, then, of course, damages as for mental pain and anguish could be recovered; but no such action has been brought. The plaintiff has shown no right of action, unless it is made to depend upon a contract; and under the law governing the contract relied upon no such damages as here sought are recoverable. Hence there was no error in the trial court's giving the affirmative charge for the defendant. What was said by this court in Mc-Gehee's Case, 169 Ala. 109, 123, 53 South. 205, 210 (Ann. Cas. 1912B, 512), concludes the plaintiff in the case at bar from recovering, though she sues in case, if no recovery can be had on the contract of shipment. It is there said:

"We have ruled, and so upon reason, as appears to us, of evident soundness, that the sendee, though suing in tort, is bound by the contract, as before stated, entered into by the sender and the company; that, if the sender was bound by the rule or regulation, the sendee is bound," etc.

[6] It is insisted that plaintiff showed a right to recover damages other than those for mental anguish, but the insistence cannot be sustained. The proof wholly failed to show right to recover any damages, other than for mental anguish, under the law of Alabama. She was not shown to have suffered any loss in property or estate. She alleged that she paid the charges to defendant as for transporting the corpse, but the proof failed. It is true she testified that she agreed with her brother and mother to pay a part thereof; and if the allegation had corresponded with the proof, a recovery might have been had as for that item—that is, provided other allegations and proof had been sufficient. There was therefore a failure of proof as to the allegation that plaintiff paid the costs of transportation. Lucas v. Southern Ry. Co., 122 Ala. 529, 25 South. 219. While this case has been overruled on the point that an undisclosed principal cannot sue on a contract made by his agent, it has not been overruled as to failure of proof or as to variance. See Manker's Case, 137 Ala. 292, 34 South. 839, and Northcutt's Case, 158 Ala. 559, 48

South. 553, 132 Am. St. Rep. 38. It therefore follows that the plaintiff showed no right to recover any damages; and no error appears, to justify a reversal of the judgment.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.